UNITED STATES of America,
Plaintiff-Appellant,

v.

INRYCO, INC., Defendants-Appellees.

No. 80–1326.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 1, 1980.

Decided April 13, 1981.

Margaret G. Halpern, Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Robert F. Finke, Chicago, Ill., on brief; E. C. Heininger, Mayer, Brown & Platt, Chicago, Ill., argued, for defendants-appellees.

Before GIBSON,* SKOPIL and POOLE, Circuit Judges.

POOLE, Circuit Judge:

The Government appeals the district court's dismissal of its indictment as time barred. The indictment charged Inryco, Inc. and Western Concrete Structures Co., Inc. (Western)[1] with a conspiracy to re-

---

* The Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. On August 27, 1980 this court granted appellant's motion to dismiss appellee Western from this appeal.

strain trade in the post-tension concrete construction of the Byron, Braidwood and Bellefonte nuclear construction projects. The essence of the conspiratorial agreement was that Western would submit complementary bids[2] on these projects to favor Inryco, and in exchange Inryco, as successful bidder, would award to Western subcontracts, purchase orders and monetary payments generated by those projects. All bids were submitted by July 31, 1974.

After reviewing the pleadings, the district court ruled as a matter of law that the conspiracy had terminated when the last bids were submitted and that the awards thereafter made to Western therefore were not during and in furtherance of the conspiracy. The government contends that the awards constituted a prime objective of the conspiracy to restrain trade and that the efforts to accomplish them resulted in continuing the conspiracy until the payments were made to Western.

We do not agree with the district court's conclusion that as a pleading matter the conspiracy terminated as a matter of law upon receipt of the last bid. Accordingly we reverse.

## I

On January 16, 1980 an indictment was returned against appellee, Inryco, and Western charging a conspiracy to restrain trade in the post-tension concrete construc-

tion (post-tensioning) of "certain" nuclear construction projects in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Post-tensioning, for the purpose of this case, is a construction process used to strengthen the concrete nuclear containment vessels that enclose the heating elements of a nuclear reactor.

The indictment charged the existence of an agreement entered into prior to January 1974 and continuing through December of 1975 whereby Western would submit complementary bids on "certain" post-tension projects for which Inryco would later reward Western. In their response to a request for a Bill of Particulars[3] the government identified the rigged bids as those submitted on the Byron and Braidwood projects bid January 17, 1974 and the Bellefonte Project bid March 8, 1974 and rebid July 31, 1974. The response further identified the reward payments, hereafter referred to as subcontract work, as "all equipment, goods and services purchased by Inryco from Western for use on or relating to the three projects; all subcontracts awarded and purchase orders for labor and materials issued to Western relating to the project and a $300,000 royalty payment for 'engineering and systems development.'"

After the government's reply to the Bill of Particulars Western and Inryco moved to dismiss the indictment as barred by the statute of limitations.[4] They claimed that

---

**2.** Complementary bids are intentionally pegged at a level above that submitted by the bidder whom the conspirators have chosen to win.

**3.** Defendants' joint request for a Bill of Particulars asked the following:

*Request No. 1*

Identify by name each of the "certain" nuclear containment vessel projects upon which the defendants agreed to eliminate Western as a competitor, and the date Western was so eliminated.

*Request No. 2*

Identify by name each of the "certain" nuclear containment vessel projects upon which the defendants agreed to submit a collusive non-competitive bid and with respect to each such project state the date of the bid.

*Request No. 3*

Describe by purchase order number or other document of purchase the "various equip-

ment, goods and services" purchased by Inryco from Western as a "reward" to Western for submitting collusive and non-competitive bids and the date of each such purchase.

*Request No. 4*

Identify the payment of monies, awarding of subcontracts or issuance of purchase orders for labor and materials for the post-tension concrete construction of "certain" nuclear containment vessel projects which was received in exchange for the submission of high or complementary bids.

**4.** 18 U.S.C. § 3282 provides:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

the objective of the conspiracy, rigging the bids to eliminate Western as a competitor, was accomplished once the Bellefonte bids were resubmitted on July 31, 1974.[5]

The government, opposing the motion, argued that the meetings between Western and Inryco, after the submission of the bids, for the purpose of determining Western's share of the subcontract work continued the conspiracy into the applicable limitations period.

The district court compared the situation to a bank robbery and analogized the payments to Western to the division of the proceeds from a bank robbery. On this premise the court ruled that for purposes of the statute of limitations the conspired terminated when the last bids were submitted and could not be extended by activities incident to the conspirators' subsequent division of the spoils.

On the same reasoning the court denied the government's motion for reconsidera-

tion. Alternatively the district judge stated that the indictment was inadequate in failing to have charged that the division of the subcontract work was part of the conspiracy. The sufficiency of the indictment is before us by virtue of the government's timely notice of appeal.

## II

■ While a Sherman Act conspiracy is technically ripe when the agreement to restrain competition is formed, it remains actionable until its purpose has been achieved or abandoned, and the statute of limitations does not run so long as the co-conspirators engage in overt acts designed to accomplish its objectives. *U. S. v. Kissel*, 218 U.S. 601, 607–608, 31 S.Ct. 124, 125–126, 54 L.Ed. 1168 (1910).[6] Thus our inquiry must begin with an analysis of the object of the conspiracy as charged in the indictment.

The district court construed the indictment as charging that the object of the

---

5. In the same motion Inryco and Western also claimed the indictment violated the ex post facto and due process clauses of the constitution. Because the district court did not reach these issues they are not a subject of this appeal.

6. Meeting a similar argument, Justice Holmes stated:

The defendants argue that a conspiracy is a completed crime as soon as formed, that it is simply a case of unlawful agreement, and that therefore the *continuando* may be disregarded and a plea is proper to show that the statute of limitations has run. Subsequent acts in pursuance of the agreement may renew the conspiracy or be evidence of a renewal, but do not change the nature of the original offense. So also, it is said, the fact that an unlawful contract contemplates future acts or that the results of a successful conspiracy endure to a much later date does not affect the character of the crime.

The argument, so far as the premises are true, does not suffice to prove that a conspiracy, although it exists as soon as the agreement is made, may not continue beyond the moment of making it. It is true that the unlawful agreement satisfies the definition of the crime, but it does not exhaust it. It also is true, of course, that the mere continuance of the result of a crime does not continue the crime. *United States v. Irvine*, 98 U.S. 450, [25 L.Ed. 193] But when the plot contemplates bringing to pass a continuous result that will not continue without the continuous

cooperation of the conspirators to keep it up, and there is such continuous cooperation, it is a perversion of natural thought and of natural language to call such continuous cooperation a cinematographic series of distinct conspiracies, rather than to call it a single one. Take the present case. A conspiracy to restrain or monopolize trade by improperly excluding a competitor from business contemplates that the conspirators will remain in business and will continue their combined efforts to drive the competitor out until they succeed. If they do continue such efforts in pursuance of the plan the conspiracy continues up to the time of abandonment or success. A conspiracy in restraint of trade is different from and more than a contract in restraint of trade. A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract but is a result of it. The contract is instantaneous, the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all without any new agreement specifically directed to that act.

*U. S. v. Kissel*, 218 U.S. 601 at 607–608, 31 S.Ct. 124, 125–126, 54 L.Ed. 1168.

conspiracy was the elimination of Western as a competitor for the projects. It relied strongly on the literal language of the government's response to Request Nos. 1 and 2 of the Bill of Particulars which contained the statement:

> While defendant Western Concrete Structure Co. submitted bids for these projects, its bids were rigged so as to eliminate it as an actual competitor as of the date the bids were submitted.

In ruling that the restraint on trade ceased once the bids eliminating Western were submitted the court recognized that the circumstances of the award of the subcontract work to Western may have spawned additional anticompetitive effects, but it held that such consequences had not been alleged with sufficient particularity in the indictment.

Under the district court's analysis, the elimination of Western as a competitor carried with it the lifting of all restraints on trade fostered by the conspiracy. But at least at the pleading stage, this does not precisely follow since a conspiracy will continue as long as its members continue to commit acts in furtherance of the agreement which tend to suppress or restrain competition. The district court adopted a very narrow construction of the nature and purpose of the illegal agreement viewing it as if the elimination of Western as a competitor via the submission of rigged bids defined its entire scope. Such a view ignores the language of the indictment and the reasonable inferences to be drawn therefrom.

■ An indictment should be considered in its entirety. *U. S. v. Anderson*, 532 F.2d 1218, 1222 (9th Cir. 1976). It must be read to include facts which are necessarily implied and construed according to common sense with an appreciation of existing realities. *Id.* at 1222. The Supreme Court in *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), held that a legally sufficient indictment must state the elements of the offense charged with sufficient clarity to apprise the defendant of what he must defend against and accurately record the crime for which the individual may be convicted or acquitted to avoid a second jeopardy of the same offense. *Id.* at 763–764, 82 S.Ct. at 1046–1047.

■ The essential elements of a continuing Sherman Act violation are the agreement to restrain trade, anti-competitive effect and an overt act committed in furtherance of the conspiracy. In the instant case the alleged agreement consisted of three parts: (1) the elimination of Western as a competitor; (2) the submission of rigged bids; and (3) rewarding Western with subcontracts, purchase orders and monetary payments generated by the projects. The effect of the charged conspiracy as stated in the indictment was to restrain competition in the post-tension construction of the three projects and to deny the owners of the nuclear reactors the benefits of free competition in contracting for the post-tensioning construction. The overt acts committed included meetings where bidding information was exchanged, submission of rigged bids and the awarding of subcontracts, purchase orders and money to Western with only the awards to Western alleged to have occurred during the limitations period.

Although not a pleading model, the indictment was adequate. Inryco knew the offense which which it was charged and the methods by which the illegal restraints on trade were made to occur. The language of the indictment makes clear that the scope of the conspiracy encompassed more than the naked submission of rigged bids.

■ First, the conspiracy is pleaded as having continued through at least December of 1975, long after the final bids had been submitted. The clear implication of such allegation is that the conduct of Western and Inryco subsequent to the bidding was to further and accomplish the stated objectives, and thus continued to violate the Sherman Act. Second, the payments to Western, its quid pro quo, were to be made only after Inryco received the contracts. The Bill of Particulars specifically identified the rewards as including all equipment, labor, materials and subcontracts "for use

on or relating to" the three projects. Third, the indictment alleged that the effect of the conspiracy was to restrain competition in the "post-tension construction of nuclear containment vessels." From this language it can be reasonably inferred that all the anticompetitive effects naturally generated by the subcontract awards were intended to be covered by the indictment. Finally, the agreement itself was defined as including the subcontract awards. The indictment characterized the awarding of the subcontract work as an integral part of the illegal conspiracy, thereby implying as a pleading matter that the awards had anticompetitive effects.

Thus, after a review of the indictment we conclude the scope of the conspiracy charged here included not simply the submission of rigged bids to attain a noncompetitive advantage for Inryco, but embraced also the objective of a noncompetitive advantage in the subcontract post-tensioning construction market of the containment vessels for Western's benefit. Certainly it could be argued that the reward aspect of the agreement promised to secure an advantage for Western over its competitors for subcontract work. Accordingly, the district court's finding that the conspiracy terminated as a matter of law must be rejected.

### III

■■ The district court also found that even if the subcontract awards were to be viewed as having potential anticompetitive effects this was not charged in the indictment with sufficient particularity and that the indictment should be dismissed on that basis. However, it is well settled that when a conspiracy is charged it is not necessary to state the object of the conspiracy with the detail that would be required in an indictment for committing the substantive offense. *Wong Tai v. U. S.*, 273 U.S. 77, 81, 47 S.Ct. 300, 301, 71 L.Ed. 545 (1927); *U. S. v. Pheaster*, 544 F.2d 353, 360 (9th Cir. 1976). The allegation that the subcontract awards were a part of the conspiratorial agreement coupled with the reasonable in-

ference that such prearranged awards would give Western a noncompetitive advantage in the subcontract market adequately apprised Western and Inryco that the conspiracy with which they were charged encompassed the subcontract awards.

Furthermore, if the indictment needed further clarification the appropriate remedy would have been to request a further Bill of Particulars. The government's response to the first Bill went unchallenged. Inryco, however, asserts that the government's response supports its contention that the scope of the conspiracy charged was narrowed, not clarified, by the Bill of Particulars. We cannot agree.

■■ A Bill of Particulars should enable a defendant to prepare an adequate defense and to protect against a second prosecution for the same offense. *Cook v. U. S.*, 354 F.2d 529, 521 (9th Cir. 1965). It is intended to supplement the indictment by providing more detail of the facts upon which the charges are based. It normally responds to specific questions formulated by the defendant.

■■ Nothing in this Bill supports the conclusion that the government viewed the conspiracy as embracing only the elimination of Western as a competitor. The language upon which Inryco attempts to rely does no more than state the obvious, i. e., that the submission of a complementary bid by its nature removes the bidder from the competition upon submission as that is the purpose of such a bid. Nor is there any language in the Bill which compels the conclusion that all restraints on competition in the construction of the containment vessels ceased the moment Western was eliminated as a competitor.

The draftsmanship of this indictment and of the Bill of Particulars as well demonstrates faint concern for the importance of careful pleading in matters as complex as antitrust indictments. We share the district court's understandable concern for the imprecision of averments which could with only average skill have been made abun-

dantly clear. Nonetheless, having in mind the pleading rules which obtain, we find the indictment at least minimally adequate, and therefore sustain its sufficiency as against a motion to dismiss.

REVERSED.