UNITED STATES of America, Appellee,

v.

A–A–A ELECTRICAL COMPANY, INC. & William T. Wilson, Appellants.

No. 85–5116.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1986.

Decided April 14, 1986.

Michael A. Doyle (Michael P. Kenny, Alston & Bird, Atlanta, Ga., William P. Pinna, Karen Carey, Pinna & Johnston, Raleigh, N.C., on brief), for appellants.

Andrea Limmer, U.S. Dept. of Justice (Douglas H. Ginsburg, Asst. Atty. Gen., W. Stephen Cannon, Deputy Asst. Atty. Gen., John J. Powers, III, Washington, D.C., John R. Fitzpatrick on brief), for appellee.

Before HALL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

A-A-A Electrical Co., Inc. ("A-A-A") and William T. Wilson, the company's owner and president, appeal their convictions entered on guilty pleas [1] of conspiracy in restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] Finding their appeal to be without merit, we affirm.

## I.

The facts in this case are not disputed and all material facts are admitted by appellants' guilty pleas. In 1979, the Raleigh-Durham Airport Authority ("RDU Authority") invited several companies to submit competitive bids for electrical construction work on a project involving the relocation of National Weather Service facilities at the airport. The bid-letting occurred on June 25, 1979. A-A-A, a North Carolina electrical construction contractor, submitted a bid of $66,324, the lowest bid for the work, and was awarded the contract on July 5, 1979.

The bids submitted on June 25, 1979, in fact were not competitive and, before that date, appellants and others had conspired to rig the bids on the project. The conspirators, including appellants, discussed their bids before submitting them and designated A-A-A as the conspirator that would submit the lowest rigged bid. A-A-A performed the contract and received final payment for its work in 1980. In May, 1980, A-A-A paid off its coconspirators for their participation in the bid-rigging.

On February 24, 1983, appellants entered into a settlement agreement with the state of North Carolina, in which the state, *inter alia,* released appellants "from all civil claims, demands, and causes of action arising under the antitrust laws of the United States, 15 U.S.C. Section 1 *et seq.*" Pursuant to that settlement agreement, A-A-A and Wilson paid $5,000 to the state in full restitution and fines and received a full release from all civil and criminal charges by the state.

On August 28, 1984, appellants were indicted by a federal grand jury for violations of the Sherman Act. They were arraigned on September 18, 1984. Appellants subsequently filed motions to dismiss, arguing, *inter alia,* that their prosecution was barred on statute of limitations and double jeopardy grounds.

---

1. Appellants' guilty pleas were conditioned upon their right to appeal the rulings of the district court with respect to their arguments, which we now address, based on the statute of limitations, double jeopardy, and the Speedy Trial Act, 18 U.S.C. § 3161 et seq.

2. 15 U.S.C. § 1 provides as follows:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

The jury voir dire took place on November 6 and 7, 1984. Because the jury was scheduled to hear two other trials first, the trial of A–A–A and Wilson was set to resume in December, 1984. Meanwhile, during November and December several matters were pending before the court, including two discovery matters and a motion to amend Wilson's bond.

Because of a congested trial docket in the Eastern District of North Carolina and to prevent undue delay, the case was reassigned on December 18, 1984, to another district judge, sitting by designation from the Eastern District of Virginia. Thereafter, the trial was scheduled to resume on January 28, 1985. On January 8, 1985, the district court denied appellants' previously filed motions to dismiss the indictment.

On January 11, 1985, defendants again moved to dismiss the indictment, claiming that the requirements of the Speedy Trial Act had been violated. The district court denied the motion, concluding that trial had timely commenced within the meaning of the Speedy Trial Act on November 6, 1984, with the jury voir dire. Appellants pleaded guilty on January 25, 1985, conditioned upon their right to file this appeal, which followed.

## II.

On appeal, appellants argue that their indictment is barred by the five-year statute of limitations applicable to Sherman Act charges and by the double jeopardy clause of the fifth amendment. They further contend that the indictment should be dismissed because of violations of the Speedy Trial Act. We disagree with each of these contentions.

■ Addressing first the statute of limitations issue, we note that appellants do not deny that they knowingly participated in the conspiracy charged in the indictment.

Nor do they deny that, as charged in the indictment, they received payments pursuant to the rigged contract and made payoffs to their coconspirators. Finally, they do not deny that these payments were received and that the payoffs were made within the applicable five-year statute of limitations.[3] They nevertheless contend that the statute of limitations bars this prosecution because their indictment on August 28, 1984, was returned more than five years from the date on which the agreement to rig the RDU Authority project bids was formed. They argue that the Sherman Act conspiracy was a single conspiracy which was complete at the latest by June 25, 1979, when the bids were submitted. They also argue that the payment which they received and the payoffs which they made in furtherance of the conspiracy in 1980 were not made in restraint of trade and are thus irrelevant in determining whether the conspiracy continued into the period of the statute of limitations. We disagree and conclude that for purposes of determining the statute of limitations, a Sherman Act conspiracy continues through the time of illegal payoffs and receipt of payments.

■ In analyzing the statute of limitations question under the general criminal conspiracy statute, 18 U.S.C. § 371, the Supreme Court held in *Grunewald v. United States*, 353 U.S. 391, 397, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957), that:

the crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy. ·

Earlier, in *United States v. Kissel*, 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168

---

**3.** 18 U.S.C. § 3282 provides for a five-year statute of limitations for criminal conspiracies, including conspiracies to violate the Sherman Act. It states that:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or

punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

(1910), the Supreme Court considered the statute of limitations with reference to a Sherman Act conspiracy and concluded that:

A conspiracy in restraint of trade is different from and more than a contract in restraint of trade. A conspiracy is constituted by an agreement, it is true, but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract, but is a result of it. The contract is instantaneous, the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all without any new agreement specifically directed to that act.

Thus, as long as some action is necessary to achieve a conspiratorial objective, a conspiracy, under the Sherman Act or otherwise, continues until the offense has been abandoned or until that objective is accomplished. *Kissel,* 218 U.S. at 608, 610, 31 S.Ct. at 126; *Hyde v. United States,* 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912); *United States v. James,* 494 F.2d 1007, 1026 (D.C.Cir.), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *Atkins v. United States,* 307 F.2d 937, 940 (9th Cir.1962); *McDonald v. United States,* 89 F.2d 128, 133–34 (8th Cir.), *cert. denied,* 301 U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937); *see also United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 252–54, 60 S.Ct. 811, 857–58, 84 L.Ed. 1129 (1940) (overt acts impliedly or expressly contemplated by Sherman Act conspiracy kept the conspiracy alive). Under this analysis, the statute of limitations begins to run, not from the date of the legally cognizable harm, but from the date of the last overt act. *Hyde, supra; Grunewald v. United States,* 353 U.S. at 396–97, 77 S.Ct. at 969–70; *United States v. Inryco, Inc.,* 642 F.2d 290 (9th Cir.1981), *pet. for cert. dismissed,* 454 U.S. 1167 102 S.Ct. 1045, 71 L.Ed.2d 324 (1982); *United States v. Girard,* 744 F.2d 1170, 1172 (5th Cir.

1984); *United States v. Epperson,* 552 F.Supp. 359, 361 (S.D.Ill.1982). *See also, United States v. CFW Construction Co.,* 583 F.Supp. 197, 206 (D.S.C.), *aff'd without opinion,* 749 F.2d 33 (4th Cir.1984) (an antitrust bid-rigging conspiracy case, in which the district court suggested that "[w]here a conspiratorial agreement includes a payoff to each conspirator, the conspiracy continues until the conspirators receive their payoffs.")

In this case, the indictment charged and appellants admitted by their guilty pleas that the conspiracy by its terms included the rigging of a bid, the securing of an artificial price for the RDU Authority project, and payoffs to the coconspirators who helped secure the project. Moreover, the requests for payments, which, like the payoffs were also made in 1980, reflected the inflated and anticompetitive price for the work. These later acts were necessary to the successful consummation of the bid-rigging agreement. In fact, as the government points out, the conspirators had to continue cooperating in order for these objectives to be achieved.

We find no support for appellants' argument that Congress intended for the Sherman Act to be treated any differently from other continuing criminal conspiracies for statute of limitations purposes. The fact that the Sherman Act does not require proof of an overt act as an element of the offense is not dispositive of the limitations question. There are other conspiracy statutes which likewise require no proof of an overt act. *See, e.g.,* 21 U.S.C. § 846 (narcotics conspiracy); 18 U.S.C. § 1962(d) (conspiracy under the Racketeer Influenced and Corrupt Organizations statute); 18 U.S.C. § 2384 (seditious conspiracy). Courts construing these statutes have similarly concluded that the statute of limitations runs from the time the conspiracy is terminated. *Cf. United States v. Coia,* 719 F.2d 1120, 1124 (11th Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984) (under 18 U.S.C. § 1962(d) a conspiracy continues "as long

as its purposes have neither been abandoned nor accomplished"); *United States v. Heldon,* 479 F.Supp. 316, 320 (E.D.Pa. 1979) (under 21 U.S.C. § 846, although statute does not require proof of overt act, "statute of limitations did not begin to run until the conspiracy actually terminated"). We, therefore, find that because the conspiracy in this case continued into 1980, the five-year statute of limitations presents no bar to appellants' 1984 indictment and subsequent prosecution.[4]

### III.

◼ We likewise find no merit in appellants' contention that this federal prosecution is barred by their settlement agreement with the state of North Carolina. In *Heath v. Alabama,* —— U.S. ——, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985), the Supreme Court recently reiterated the right of separate sovereigns to prosecute the same criminal conduct without violating the fifth amendment's double jeopardy clause. In this case, the federal government was of course not a party to the settlement between appellants and the state. Nor did the agreement immunize appellants from criminal prosecution by the federal government for Sherman Act violations. The agreement merely released appellants from any claims which the *state* might have, including claims arising out of the federal antitrust laws. Under the circumstances, appellants' federal prosecution is not prohibited by the double jeopardy clause.

**4.** We reach this conclusion mindful of the fact that the four-year statute of limitations in 15 U.S.C. § 15b for civil antitrust actions begins to run at the time the antitrust cause of action accrues and that the continued receipt of payments may not constitute a continuing violation of the antitrust laws for civil statute of limitations purposes. *See Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1052–55, *reh. den.,* 683 F.2d 1373 (5th Cir.1982), *cert. den.,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). The present case, however, is controlled not by 15 U.S.C. § 15b or the cases interpreting that provision but by an entirely different statute governing the limitations period for criminal conspiracies, including those of a continuing nature.

### IV.

◼ Finally, we reject appellants' contention that the indictment must be dismissed because the Speedy Trial Act was violated.[5] Specifically, appellants argue that the district court erred in determining that under Local Rule 4(e)(3) of the Eastern District of North Carolina, trial began for purposes of the Speedy Trial Act at the time of voir dire on November 6, 1984. Appellants claim that the trial did not begin until January 28, 1985, when the jury was empaneled and sworn and jeopardy attached. According to appellants' calculations, the trial should have begun no later than January 4, 1985, to fall within the Speedy Trial Act's mandatory deadline. We disagree.

Courts which have addressed the issue of when trial begins for Speedy Trial Act purposes have consistently held that trial commences with voir dire. *United States v. Whitaker,* 722 F.2d 1533, 1535 (11th Cir. 1984); *United States v. Manfredi,* 722 F.2d 519, 524 (9th Cir.1983); *United States v. Howell,* 719 F.2d 1258, 1262 (5th Cir.1983), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984); *United States v. New Buffalo Amusement Corp.,* 600 F.2d 368, 376 (2d Cir.1979); *United States v. Scott,* 557 F.Supp. 990, 991 & n. 1 (N.D.W. Va.1983); *United States v. Manbeck,* 514 F.Supp. 152, 154 n. 4 (D.S.C.1981). We agree and hold that in this case because trial commenced at the time of voir dire the Speedy Trial Act was not violated.[6]

**5.** 18 U.S.C. § 3161(c)(1) provides that the trial of a defendant shall commence within seventy days from the filing date of the indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever date last occurs. Certain periods of delay are excluded in computing the time within which the trial must commence, including time attributable to pretrial motions and proceedings taken under advisement. 18 U.S.C. § 3161(h).

**6.** Although there was a delay in resuming trial following the jury voir dire, the delay was not an unreasonable one in light of the necessity to substitute another district judge from outside the Eastern District of North Carolina. Certainly, under the circumstances presented here, the

V.

For the foregoing reasons, appellants convictions for violating the Sherman Act are affirmed.

AFFIRMED.

recess of the trial does no violence to the purpose of the Speedy Trial Act deadlines.

The government alternatively submits that because of pending motions, much of the time between September 18, 1984, and January 25, 1985, when appellants' conditional guilty plea was entered, was excluded under the Speedy Trial Act. According to the government, only sixteen days actually ran under the act. Because of our disposition, we do not address the government's alternative contention.