UNITED STATES of America, Appellant,

v.

NORTHERN IMPROVEMENT COMPANY, William Collins, Inc., F–M Asphalt, Inc., S & S Construction Co., and Steve McCormick, Appellees.

No. 86–5216.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1986.

Decided March 24, 1987.

Rehearing and Rehearing En Banc Denied May 8, 1987.

Andrea Limmer, Washington, D.C., for appellant.

David R. Melincoff, Washington, D.C., for appellees.

JOHN R. GIBSON, Circuit Judge.

The United States appeals from the dismissal of an indictment against Northern Improvement Company, F–M Asphalt, and Steve McCormick, charging them with violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (1982), on the ground that it was barred by the statute of limitations. The indictment charged participation by the defendant-appellees in a collusive, noncompetitive submission of rigged bids to the cities of Fargo and West Fargo, North Dakota, and Moorhead, Minnesota for the award of municipal improvement projects; the award of various projects to the defendants; and the receipt by the defendants of payment for these projects. The district court held that the last act triggering the running of the five year statute of limitations was the submission of the rigged bids rather than the receipt of payments pursuant to the contracts awarded on the bids. We conclude that the statute did not run until receipt of the payments; we reverse the judgment of the district court dismissing the indictment and remand for trial.

The indictment alleged that the three cities invited municipal street improvement contractors to submit sealed competitive bids on various projects. After the receipt and opening of the bids at a process known as a "bid letting," the cities awarded contracts to the lowest bidder. The indictment charged that as early as 1975 and continuing at least through July 28, 1981 the defendants and others engaged in a continuing agreement to submit collusive, noncompetitive, rigged bids to the cities. To effectuate the conspiracy, the indictment charged that the defendants discussed the submission of prospective bids and agreed who among them would be the low bidder with the expectation that it would be awarded the project; that they submitted intentionally high non-competitive bids on some of the projects; and that they received and accepted payments from the cities for work performed on the projects. The bill of particulars detailed the meetings and conversations among the defendants. It alleged that the conspirators agreed which one would be the low bidder on each project and that the designated low bidder provided the others with numbers to use in preparing their bids so that the other bids would be high and non-competitive. The conspiracy allegedly continued "at least" until July 28, 1981 when the City of Fargo made its final payment to Northern Improvement Company for work on one of the projects that had been let on March 3, 1980.

The indictment was filed on October 9, 1985. The defendants moved to dismiss the indictment on the ground that it was barred by the five-year statute of limitations. 18 U.S.C. § 3282 (1982). When the motion to dismiss was filed, the district court defined the issue as being whether the statute of limitations was triggered by the bid offer, the contract award, or the payment. It concluded that there was no sharing of spoils after the payments on the contracts or showing of favoritism on subcontract awards and that, under the indictment and bill of particulars, the purpose of the conspiracy was accomplished when the rigged bids were submitted. The conspiracy, therefore, terminated at that time. The district court dismissed the indictment.

The government appeals, arguing that the conspiracy continued until all of its objectives were achieved and until the contemplated illicit gain was realized, *i.e.,* Northern Improvement received payment on one of the contracts on June 28, 1981.

A conspiracy is a "partnership in criminal purposes." *United States v. Kissel,* 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168 (1910). "[T]he crucial question in determining whether the statute of limi-

tations has run is the scope of the conspiratorial agreement, for it is that which determines * * * the duration of the conspiracy * * *." *Grunewald v. United States,* 353 U.S. 391, 397, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957). While a Sherman Act conspiracy is technically ripe when the agreement to restrain competition is formed, "it remains actionable until its purpose has been achieved or abandoned." *United States v. Inryco,* 642 F.2d 290, 293 (9th Cir.1981) (citing *Kissel,* 218 U.S. at 607–08, 31 S.Ct. at 125–26, *cert. dismissed,* 454 U.S. 1167, 102 S.Ct. at 1045, 71 L.Ed.2d 324 (1982)). As this court said some years ago: "[A] criminal conspiracy once formed continues until the object of it has been accomplished unless abandoned short of an overt act, or broken up by the arrest of the participants." *McDonald v. United States,* 89 F.2d 128, 133 (8th Cir.), *cert. denied,* 301 U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352 (1937). We have no difficulty in concluding that the conspiracy charged in the indictment continued until Northern Improvement received payment and, accordingly, the five-year statute of limitations had not run against the defendants.

The defendants contend that the only substantive term of the conspiracy was the agreement to submit the rigged bids. This agreement and the submission of the rigged bids are, the defendants argue, the only acts charged against the defendants as being in furtherance of the conspiracy. The indictment and bill of particulars, however, plainly charge the defendants with having entered their bid-rigging agreement "with the expectation that [the agreed upon] low bidder would be awarded the project and paid by the city awarding the project for the construction of the project * * *." Designated Record at 8. They are also charged with "receiving and accepting * * * payments for work performed on * * * municipal street improvement projects." *Id.* at 9. As indictments are to be read in a common sense, nontechnical manner, *United States v. Pleasant,* 469 F.2d 1121, 1125 (8th Cir.1972), we do not doubt that this indictment is broad enough to encompass the event—receipt of payment—on which the government relies to bring the defend-

ants' activities within the statute of limitations.

The district court nonetheless concluded that the "purpose" of the conspiracy terminated at the time the bids were submitted, as that was the moment when the "terms and conditions of the illegal contract were completed." *United States v. Northern Improvement Co.,* 632 F.Supp. 1576, 1581 (D.N.D.1986). No conspirator owed any right or obligation to any other conspirator beyond that point. After the bids were submitted, "only the interest of each individual bidder, as an individual and not as a co-conspirator, remained." *Id.* at 1581. We do not agree.

The purpose of entering the conspiracy, and the purpose of submitting the rigged bids, was not merely to restrain competition for the satisfaction of violating the Sherman Act. We do not deal here with criminal behavior that is an end in itself. Common sense tells us that the conspirators' purpose was to reap the benefit of the conspiracy: to be awarded public improvement contracts at anti-competitively high prices and to be paid for those contracts. As we stated in the different but analogous context of a conspiracy to transport a kidnapped person held for ransom across state lines,

> What was the object to be attained by the capture and detention of Brenner? Clearly, it was not for the mere pleasure of his company at the "hide-out" over in Illinois, or in moonlight joy rides back and forward across the Illinois, Wisconsin, and Minnesota boundaries. But as in almost all cases which fall under the ban of the statute, the seizure and detention of Bremer was for the purpose, therefore with the object of illicit gain.

*McDonald,* 89 F.2d at 133.

As in *McDonald,* the object and purpose of this illegal agreement was "illicit gain," the receipt of payments, and we conclude that the district court erred in holding that the purpose of the conspiracy terminated the moment the bids were submitted.

Our conclusion that the scope and purpose of the conspiracy included the receipt

of payments on the contracts awarded pursuant to collusive, non-competitive bids does not answer the defendants' contention that the mere unilateral receipt by a conspirator of payment does not constitute an "overt act" in furtherance of the conspiracy. The district court accepted this proposition. It observed that "[n]o claim is made that the parties engaged in any joint action after submitting the rigged bids. * * * No sharing of the spoils after payment or showing of favoritism on subcontract award [was] present." *Northern Improvement*, at 1581. We believe, however, that Northern Improvement's acceptance and retention of payment was an overt act in furtherance of the conspiracy.

Two recent cases from the Fourth and Ninth Circuits are particularly instructive on this issue. In *United States v. A–A–A Electrical Co.*, 788 F.2d 242 (4th Cir.1986), the Fourth Circuit considered the commencement of the running of the statute of limitations under circumstances very similar to those herein. The *A–A–A* defendants were convicted of conspiracy to rig bids for electrical public works contracts in violation of section 1 of the Sherman Act. *Id.* at 243. On appeal, they contended that the indictment should have been dismissed as time-barred, as the conspiracy was complete and its purpose fulfilled on the date the rigged bids were submitted, more than five years prior to the filing of the indictment. *Id.* at 244. The Fourth Circuit observed that the purpose of the conspiracy was to obtain a non-competitive, artificially high price for the electrical contracts. Thus, the request for and receipt of final payment "reflected the inflated and anti-competitive price for the work * * * [and was] necessary to the successful consummation of the bid-rigging agreement." *Id.* at 245. The court concluded that the statute did not begin to run until *after* the payment was received.[1]

Likewise, in *United States v. Inryco, Inc.*, 642 F.2d 290 (9th Cir.1981), the Ninth Circuit held that a bid-rigging conspiracy did not terminate when the bids were submitted, but rather when the objective of the conspiracy was met. *Id.* at 293. This objective was to restrain competition, to gain a "non-competitive advantage," *id.* at 295, and the award of subcontract work, purchase orders, and monetary payments pursuant to the contracts all furthered that objective. *Id.* "[T]he scope of the conspiracy encompassed more than the naked submissed of rigged bids." *Id.* at 294.

The reasoning of the *A–A–A* and *Inryco* courts is persuasive.[2] We conclude that

---

1. The district court and the defendants distinguish *A–A–A* on the basis of payoffs made among the conspirators after receipt of payment on the contracts, characterized by the defendants as concerted and overt acts. *Northern Improvement*, at 1579, 1581. While it is true that the *A–A–A* court discusses the payoffs, 788 F.2d at 245, we think that the court's reference to payment as being integral to the agreement's purpose—to produce inflated, anticompetitive prices—shows that the payoffs were not necessary to the court's holding. Moreover, the act of accepting funds in payment of a contract by a single conspirator, if in furtherance of the purpose of the conspiracy, may toll the running of the statute of limitations as to the conspiracy whether or not the payment is later divided among the conspirators. *United States v. Girard*, 744 F.2d 1170, 1173–74 (5th Cir.1984).

2. The defendants contend that the Fifth Circuit's opinion in *United States v. Davis*, 533 F.2d 921 (5th Cir.1976), dictates a result contrary to that we reach today. The *Davis* defendants were charged under the general conspiracy statute, 18 U.S.C. § 371, with conspiring to knowingly and willfully make false statements as to material facts within the jurisdiction of the United States Department of Labor, Manpower Division, in violation of 18 U.S.C. § 1001. *Id.* at 923. The Fifth Circuit held that the defendants' convictions were time-barred because the object of the conspiracy was to make the false statements, all of which were made outside the applicable limitations period. *Id.* at 927. The government urged, as in this case, that the ultimate object of the conspiracy was to profit from the statements. The court's rejection of this argument was based on a narrow reading of the indictment. *Id.*

In the present case, the indictment charges the defendants with conspiracy to restrain trade in violation of the Sherman Act. This restraint is accomplished both by the submission of non-competitive bids *and* by the request for and receipt of payments at anti-competitive levels. *A–A–A*, 788 F.2d at 245. The *Davis* indictment merely charged conspiracy to make certain false statements. When those statements were made, the conspiracy was over. *Davis*, 533 F.2d at 927. We believe *Davis* is inapposite.

The defendants also contend that their position is supported by a recent dismissal of an

the district court erred in dismissing the indictment against Northern Improvement, F–M Asphalt, and Steve McCormick. The statute of limitations did not begin to run until after Northern Improvement accepted payment from the City of Fargo on July 28, 1981. *See A–A–A*, 788 F.2d at 245–46; *Inryco*, 642 F.2d at 294–95. The district court's dismissal of the indictment is reversed and the case is remanded for trial.

indictment by a court relying on the district court's decision in this case. *See United States v. Evans & Assocs. Constr. Co.*, No. C–86–77 (W.D.Okla. Nov. 18, 1986) [Available on Westlaw DCT database]. As we reverse the district court's dismissal of the instant indictment, we believe that the case cited by the defendants is not persuasive.