936 F.2d 567
 1991-1 Trade Cases 69,474
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
ALLEN'S MOVING AND STORAGE, INC., Carolina Van & Storage
Company of Jacksonville, Inc., Jerry W. McCauley,
Stanley L. McCauley, Defendants-Appellants.
 No. 90-5824.
 United States Court of Appeals, Fourth Circuit.
 Argued April 11, 1991.
Decided June 28, 1991.
As Amended July 17, 1991.
 
 1
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Malcolm J. Howard, District Judge. (CR-89-40)
 
 
 2
 James Robert Wyrsch, Koenigsdorf & Wyrsch, P.C., Kansas City, Mo. (Argued), for appellants; Lionel S. Lofton, Charleston, S.C., on brief.
 
 
 3
 Andrea Limmer, United States Department of Justice, Washington, D.C. (Argued), for appellee; James F. Rill, Assistant Attorney General, Alison L. Smith, Deputy Assistant Attorney General, John J. Powers, III, Patricia G. Chick, Marc, W.F. Galonsky, Mary Jean Moltenbrey, United States Department of Justice, Washington, D.C., on brief.
 
 
 4
 E.D.N.C.
 
 
 5
 AFFIRMED.
 
 
 6
 Before BUTZNER and CHAPMAN, Senior Circuit Judges, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 RICHARD L. WILLIAMS, District Judge:
 
 7
 Defendants were convicted of price fixing in violation of Section One of the Sherman Act, 15 U.S.C. Sec. 1. On appeal, defendants contend that evidence was improperly admitted, that exculpatory evidence was withheld, that the jury was improperly instructed, and that the indictment was insufficient. We find these claims are without merit, and therefore affirm the conviction.
 
 I.
 
 8
 This case involves a conspiracy to fix the prices charged for packing and moving household goods from Camp LeJeune Marine Corps Base, in North Carolina, to the other 47 contiguous states and the District of Columbia. The defendants are local movers in the Camp LeJeune area who acted as agents for interstate carriers who wished to serve the Base.
 
 
 9
 The Military Traffic Management Command has established rules which require interstate carriers to file rates every six months. After the rates are filed, there is a "me-too" period during which a carrier can match a lower rate charged by another carrier. Each interstate carrier wishing to serve the Camp must be represented by a local agent. The local agent books the shipment, packs the goods, and stores them if necessary. The local agent is paid a commission by the interstate carrier. This commission is typically a percentage of the rate charged by the carrier.
 
 
 10
 Although the rates are officially set by the carrier, the local agents often participate in setting the price. If the agent is not satisfied with the price the carrier has set, he may drop that carrier and refuse to represent it. If not picked up by another agent, that carrier will not be allowed to do business at Camp LeJeune. Carriers are selected by the Camp LeJeune Transportation Office based upon their rates and service record.
 
 
 11
 Since the early 1980's, defendant Jerry McCauley had controlled Sherwood Van Lines ("Sherwood") and other carriers that frequently filed discount rates. In 1984, after voicing frustration about low rates, the local agents conspired with Jerry McCauley to eliminate all discount rates. The agents agreed to urge their carriers to file non-discounted rates for the Winter 1984 period. All the carriers but Sherwood complied by filing 100%[1] rates. The agents agreed that any carrier meeting Sherwood's discounted rate would be dropped. Jerry McCauley promised to have Sherwood increase its rate in the "me-too" period.
 
 
 12
 Despite this promise, Sherwood did not increase its rates. Instead, five other carriers represented by Jerry McCauley reduced their rate to meet Sherwood's discount. John Sewell, Robert Kerns, Carl Koonce, and Stanley McCauley met with Jerry McCauley to persuade him to drop these discount carriers. After some discussion, Jerry McCauley agreed to drop his discount carriers in exchange for non-discount carriers with good service records. Koonce, Kerns, Sewell, and Stanley McCauley each agreed to give Jerry one of their carriers. They also agreed to contact Tom Humphrey and Bill Fodrie and ask that they each give Jerry McCauley one of their carriers.
 
 
 13
 Pursuant to this "drop-and-swap" agreement, Jerry dropped all six discount carriers on October 26, 1984. By early November, he had picked up six new non-discount carriers--one each from Koonce, Kerns, Sewell, Stanley McCauley, Humphrey, and Fodrie. Camp LeJeune was therefore forced to book shipments at non-discounted rates.
 
 
 14
 Koonce, Kerns, Sewell and Fodrie all testified about their meeting with Jerry McCauley. All four defendants were convicted on May 2, 1990, following a seven day jury trial. The corporate defendants, Allen's Moving and Storage, Inc., and Carolina Van and Storage Co. of Jacksonville, Inc., were fined $25,000. The individual defendants, Jerry and Stanley McCauley, were fined $10,000 and sentenced to three years in prison, with all but the first six months suspended.
 
 II.
 
 15
 Defendants first object to the district court's decision to allow the government to call Lieutenant Colonel Benjamin McNutt ("McNutt") as a rebuttal witness. Defendants contend that this violated the pretrial stipulation and Rules 404(b) and 608(b) of the Federal Rules of Evidence.
 
 
 16
 In its case in chief, the government presented witnesses who testified that illegal payments had been made to McNutt, who was the Camp LeJeune Transportation Officer. This evidence helped explain why the conspirators could expect to get away with such obvious shuffling of carriers. The defendants' cross-examination of these witnesses sought to impeach their credibility and suggest that the defendants themselves made no payments to McNutt. The defendants testified in their own defense and denied ever making payments to McNutt.
 
 
 17
 At this point, the government decided to call McNutt as a rebuttal witness. The defendants were immediately notified. On April 30, 1990, the district judge ruled that he would allow McNutt's rebuttal testimony; however, McNutt did not take the stand until the next day. McNutt testified that he had received illegal payments from both defendants, and that Jerry McCauley had confided with him that the other agents were forcing him to drop the discount carriers. The defendants did not seek a continuance or submit any surrebuttal. Instead, defendants conducted an extensive cross-examination which was more lengthy that the direct examination. Defendants have made no showing that they could have discredited McNutt's testimony if given more notice.
 
 
 18
 The admission of evidence is vested in the sound discretion of the district court, and will not be disturbed absent extraordinary circumstances. United States v. MacDonald, 688 F.2d 224, 227-28 (4th Cir.1982), cert. denied, 459 U.S. 1103 (1983). Here, we find that McNutt was properly called as a rebuttal witness, that the defendants had sufficient time to prepare, and that the defendants were not prejudiced by the government's failure to include McNutt on their witness list. The district court properly allowed the testimony.
 
 
 19
 Defendants' contention that McNutt's testimony violated Rules 404(b) and 608(b) is similarly without merit. The testimony was directly relevant to show Jerry McCauley's state of mind at the time he dropped the carriers. The illegal payments were probative because they explained why the defendants could engage in blatant price-fixing without fearing action by the Transportation Office. Finally, the testimony dispelled defendants' claims that they were not involved in the illegal activities of the other coconspirators.
 
 
 20
 The decision of the district court to admit evidence under Rules 404(b) and 608(b) will not be overturned in the absence of an arbitrary or irrational abuse of discretion. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). Here, the district court properly found that the probative value of McNutt's testimony outweighed any undue prejudice to the defendants. Rather than simply demonstrate a prior "bad act", the evidence of illegal payments was essential to put the conspiracy in context. The testimony was properly admitted.
 
 III.
 
 21
 Defendants also claim that the government withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). The evidence at issue is a letter written by Troy Humphrey's attorney in connection with the preparation of Humphrey's presentence report. The letter states that Humphrey had "independent reasons for dropping" the carrier which Jerry McCauley picked up.
 
 
 22
 This evidence is not exculpatory. First, the letter's assertion is directly contradicted by Humphrey's plea of guilty to the conspiracy charges. Moreover, the letter does not contradict the fact that Humphrey dropped the carrier after Carl Koonce called and asked him to do so.
 
 
 23
 It is also evident that defendants knew of this evidence prior to trial. Defendants admit that they received hearsay information that Humphrey may have cancelled the carrier for business reasons. Indeed, in their opening statement defendants mentioned the possibility that Humphrey had legitimate business reasons for dropping the carrier. The letter is simply cumulative hearsay. Defendants could have called Humphrey or his attorney as a witness, but they did not.
 
 
 24
 The government was under no obligation to disclose this letter to the defendants. No harm was done by nondisclosure. Even assuming that Humphrey acted for independent business reasons, the timing of the swap clearly implicates Jerry McCauley. The government's mention of Humphrey in their closing argument was entirely proper and consistent with all the evidence. There was no Brady violation or other error. Defendants' motion for a new trial was correctly denied.
 
 IV.
 
 25
 Defendants contend that the court's jury instructions were defective. First, defendants contend that the jury was improperly instructed that defendants' conduct was a per se violation of the Sherman Act. Defendants concede that horizontal price fixing is a per se violation of the Sherman act, but claim that this was not properly charged in the indictment. However, the indictment charges that defendants engaged in a "conspiracy to restrain competition by fixing prices charged to the Department of Defense ..." The indictment therefore plainly charged a per se offense.
 
 
 26
 The district court correctly instructed the jury that price fixing, if proven beyond a reasonable doubt, is a per se violation of the Sherman Act. See Catalano, Inc. v. Target Sales, Inc., 446 U.S. 643, 646-47 (1980) (per curiam). The sole jury issue was whether the defendants fixed prices. The reasonableness of the prices and the intentions of the defendants was irrelevant.
 
 
 27
 Defendants also contend that they were entitled to an instruction on the specific intent to violate the law. However, since price fixing is illegal per se, specific intent is not required. United States v. Society of Indep. Gasoline Marketers, 624 F.2d 461, 465 (4th Cir.1979), cert. denied, 449 U.S. 1078 (1981). The district court properly charged the jury on the requirement that the defendants willfully entered the conspiracy. This was the only intent instruction required. See United States v. Gravely, 840 F.2d 1156, 1161 (4th Cir.1988). The trial court properly refused to give defendants' proffered instruction No. 51, since it required an intent to violate the law.
 
 
 28
 Defendants also contend that the jury was improperly instructed regarding legal impossibility. Defendants claim that since the carriers actually set the rates, the local agents were incapable of fixing prices. However, this argument ignores the fact that the local agents could, and did, effectively fix prices by refusing to represent discount carriers. The evidence at trial overwhelmingly demonstrated that the local agents intended to fix prices and did so successfully. No rational jury could have concluded that the conspiracy to drop discount carriers was legally impossible, an therefore such an instruction was unnecessary.
 
 
 29
 Defendants also contend that the district court erred by refusing to instruct the jury concerning the statute of limitations. However, a conspiracy in violation of the Sherman Act continues for statute of limitations purposes until all the payments are received under the illegally set prices. United States v. A-A-A Electrical Co., 788 F.2d 242, 245 (4th Cir.1986) (citing cases). The uncontroverted evidence at trial established that the conspiracy continued to fix prices into the Spring of 1985. The evidence at trial also established that payment was made after shipment of the goods. Since the indictment was filed on November 19, 1989, the Spring of 1985 was well within the five year period. There was no statute of limitations issue for the jury to consider.
 
 
 30
 A jury charge is not erroneous if, "taken as a whole, the instruction fairly states the controlling law." United States v. Cobb, 905 F.2d 784, 788-89 (4th Cir.), reh'g denied, en banc United States v. Hatcher, 1990 U.S.App. LEXIS 12,284 (1990), cert. denied, 111 S.Ct. 758 (1991). There is no requirement that the court instruct the jury on a theory of defense which lacks sufficient basis in the record. United States v. Head, 697 F.2d 1200, 1212 (4th Cir.1982), cert. denied, 462 U.S. 1132 (1983); United States v. West, 877 F.2d 281, 293 (4th Cir.), cert. denied, 110 S.Ct. 195 (1989). Here the charge was proper. Each denied instruction either failed to have a basis in law, or lacked support in the factual record.
 
 V.
 
 31
 Finally, defendants claim that the indictment was insufficient and impermissibly vague. However, an indictment is sufficient if it: 1) contains the elements of the offense charged, 2) fairly informs the defendant of the charge against which he must defend, and 3) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974). Here, all three of these elements were satisfied.
 
 
 32
 Defendants complain that the indictment did not contain specific times and places; however, these need not be included. Glasser v. United States, 315 U.S. 60, 66 (1942). Specific details may be provided during discovery, or through a bill of particulars. The instant indictment adequately detailed the nature and mechanism of the conspiracy. It specifically charged that the defendants "participated in meetings and conversations concerning rates for interstate shipments for the six months beginning November 1, 1984." The "drop-and-swap" agreement was delineated. This language, which precisely describes the offense conduct, is quite sufficient to withstand a challenge for vagueness.
 
 
 33
 Finally, defendants argue that the indictment provides no protection against double jeopardy. However, the conspiracy described by the indictment is sufficiently precise to bar any future prosecution for a conspiracy to eliminate Camp LeJeune discount rates staring on November 1, 1984. Under the test set forth in Hamling, the instant indictment is clearly sufficient.
 
 VI.
 
 34
 We find defendants' various claims without merit, and therefore the convictions below are
 
 
 35
 AFFIRMED.
 
 
 36
 BUTZNER and CHAPMAN, Senior Circuit Judges, joined.
 
 
 
 [1]
 Carriers file their rates as a percentage of a "baseline" rate fixed by the Military Traffic Management Command