**UNITED STATES of America, Plaintiff,**

v.

**NORTHERN IMPROVEMENT COMPANY, et al.,
Defendants.**

**Crim. No. C3–85–062.**

United States District Court,
D. North Dakota,
Southeastern Division.

April 25, 1986.

---

Mary E. Jones, Atty., U.S. Justice Dept., Chicago, Ill., for plaintiff.

Kermit E. Bye and Carlton J. Hunke, Fargo, N.D., for Northern Improvement.

David R. Melincoff, Washington, D.C., for F–M Asphalt, Inc.

Richard J. Braun, Nashville, Tenn., for Steve McCormick.

## ORDER OF DISMISSAL

CONMY, Chief Judge.

The Defendants are charged with a violation of the Sherman Act, 15 U.S.C. § 1, by an indictment which charges:

### Offense Charged

17. Beginning at least as early as 1975, and continuing at least through July 28, 1981, the exact dates being unknown to the grand jury, the Defendants and co-conspirators engaged in a combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. Section 1).

18. The aforesaid combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and co-conspirators a substantial term of which was to submit collusive, noncompetitive and rigged bids to the City of Fargo, North Dakota, the City of West Fargo, North Dakota and the City of Moorhead, Minnesota for the award of municipal street improvement projects in those cities.

The "overt acts", as set forth in the indictment are:

A. Discussing the submission of prospective bids;

B. Agreeing on a designated successful bidder with the expectation that such successful bidder would ultimately be paid for the work done;

C. Submitting rigged bids;

D. Submitting bids containing false statements;

E. Receiving and accepting payments.

The Bill of Particulars, filed Under Seal by the Government and as limited by this Court recites the following:

The period of time covered by the Indictment in this case begins at least as early as 1975 and continues at least through July 28, 1981. The latter date was the date on which the City of Fargo, North Dakota made final payment for the work performed on Improvement District No. 3682, which was let by the City of Fargo on March 3, 1980 and was won by Northern Improvement Company.

. . .

The evidence will show that defendants, individually and through their officers, directors, agents, employees and representatives, participated in a conspiracy to rig the bids on municipal street improvement projects in the cities of Fargo, North Dakota, West Fargo, North Dakota and Moorhead, Minnesota. Generally, the conspirators agreed which company would be the low bidder on those projects, and the designated low bidder then provided bid amount numbers for the other coconspirators to use in preparing their bids so that those bids would be intentionally high and noncompetitive. The evidence will show, among other things, that there were meetings and conversations involving representatives of Northern Improvement Company, William Collins, Inc., S & S Construction Co. and F–M Asphalt, Inc. throughout the conspiracy period and that in these meetings and conversations the bids for numerous municipal street improvement projects were rigged. The conspirators carried out this conspiracy by submitting the collusive bids to the municipal letting agencies and receiving payments from the municipalities which had been de-

frauded into believing they had received competitive bids. The conspiracy continued until at least July 28, 1981 when final payment by check was made by the City of Fargo to Northern Improvement Company for work on a project let by the City of Fargo on March 3, 1980. Northern Improvement Company received and deposited this check to its accounts.

Numerous municipal street improvement projects were rigged as part of the conspiracy. Payments for the following municipal street improvement projects, which, among others, were rigged as part of the conspiracy, were made and received on or after October 9, 1980.

1. City of Fargo, North Dakota
   Project No. 3682
   Let on March 3, 1980
   Winning bidder—Northern Improvement Company
   Final Payment date—July 28, 1981 [1]

2. City of Fargo, North Dakota
   Payment [sic] No. 3688
   Let on March 24, 1980
   Winning bidder—F-M Asphalt, Inc.
   Final payment date—January 27, 1981

3. City of Fargo, North Dakota
   Project No. 3669
   Let on April 7, 1980
   Winning bidder—Northern Improvement Company
   Final payment date—December 9, 1980

4. City of Fargo, North Dakota
   Project No. 3687
   Let on April 7, 1980
   Winning bidder—William Collins, Inc.
   Final payment date—January 13, 1981

5. City of Fargo, North Dakota
   Project No. 3693
   Let on April 7, 1980
   Winning bidder—Northern Improvement Company
   Final payment date—July 28, 1981

6. City of Fargo, North Dakota
   Project No. 3695
   Let on June 16, 1980
   Winning bidder—S & S Construction Co.
   Final payment date—December 16, 1980

7. City of West Fargo, North Dakota
   Project No. 2046
   Let on May 21, 1979
   Winning bidder—S & S Construction Co.
   Final payment date—October 9, 1980

8. City of West Fargo, North Dakota
   Project No. 2048
   Let on July 30, 1979
   Winning bidder—F-M Asphalt, Inc.
   Final payment date—December 2, 1980

9. City of Moorhead
   Project No. 79–A2–3
   Let on July 10, 1979
   Winning bidder—Northern Improvement Company
   Final payment date—November 23, 1981

10. City of Moorhead
    Project No. 79–A3–1
    Let on July 10, 1979
    Winning bidder—F-M Asphalt, Inc.
    Final payment date—December 26, 1980

The Government believes that the evidence will further show that the combination and conspiracy was partly express and partly implied.

The indictment was issued on October 9, 1985. The Defendants have made a Motion to Dismiss the Indictment and have agreed, for the purpose of their Motion, that we may assume that all of the information contained in the indictment is true.

The Defendants base their Motion to Dismiss the Indictment on a claim that the government failed to indict during the applicable statute of limitations period. The Defendants argue that they are charged with a conspiracy to violate the Sherman Act by agreeing to submit 'rigged bids.' The consideration for the agreement, as

---

**1.** Final payment dates are in some instances approximations. [Footnote in original document.]

charged by the government, was that each individual conspirator would be given an opportunity to bid on a job without the other co-conspirators bidding competitively on that particular project.

The Defendants' position is that the bids were submitted and contracts awarded pursuant to those bids. The last contract award was made five years and two months prior to the indictment date. At this point any "conspiracy" was over, and the purposes fully accomplished. Since the statute of limitations provides for a five-year period, the prosecution is barred.

The Government, on the other hand, argues that the purpose of the conspiracy was to profit illegally through the rigged bids. That purpose was not accomplished until payments on the noncompetitive bids were received by the conspirators. The payments for the bid projects were received during the five-year period prior to the indictment, therefore, the prosecution was timely.

The crime charged is a *per se* violation of the Sherman Act. It does not matter that the actual bids submitted by the 'designated bidder' on a project were higher or lower than the fair market value of the job. If, in fact, the 'designated bidder' submitted a bid which was far below the reasonable value and lost money, that would be no defense to the criminal charge. The specific charge against the Defendants requires no proof of the economics of the matter, only that an agreement was made to bid in a collusive way.

The crime would be complete even if none of the 'designated bidders' was successful in obtaining a contract award. It is simple common sense, however, to conclude that the motivation of the conspirators was not altruistic. The Court readily accepts that the conspirators hoped to profit financially through the performance of the project which was assigned to each, and, in order to profit, one must be paid for the project. The Court also concludes that all contractors bidding, legally or otherwise, were similarly motivated.

## ISSUE

The issue presented is fairly narrow. Which event triggered the statute of limitations—the bid offer, the contract award, or the payment?

## ANALYSIS

Counsel for each side offer the same cases in support of their respective and opposite positions. The prosecution has recently called the attention of this Court to a shiny new decision of the United States Court of Appeals for the Fourth Circuit as good authority for the government's position. As expected, the Defendants have urged that the case is also good authority for their position.

In *United States v. A-A-A Electrical Co., Inc.,* 788 F.2d 242 (4th Cir.1986), the defendants were charged with violating Section 1 of the Sherman Act by forming a conspiracy to submit rigged bids on a city airport project in restraint of trade. The defendants preserved their right to appeal from an order denying a Motion to Dismiss based upon the statute of limitations, and entered a guilty plea. The Circuit Court affirmed the trial court.

In the language of the Court:

The bids submitted on June 25, 1979, in fact were not competitive and, before that date, appellants and others had conspired to rig the bids on the project. The conspirators, including appellants, discussed their bids before submitting them and designated A-A-A as the conspirator who would submit the lowest rigged bid. [A-A-A was awarded the contract on July 5, 1979.] A-A-A performed the contract and received final payment for its work in 1980. *In May, 1980, A-A-A paid off its co-conspirators for their participation in the bid rigging.*

At 243 (emphasis added).

The defendants in *A-A-A* were indicted on August 28, 1984. One of the issues on appeal, and the one that concerns us here, is whether the five-year statute of limitations ran from the date of the submissions of rigged bids or the date the defendants were paid for the project and paid off their

co-conspirators. If the statute began to run on July 5, 1979, (the date the bids were submitted) then the indictment on August 28, 1984 came 5 years and 54 days after the conspiracy ended. If the statute began to run in May of 1980, (the time when the defendants were paid and when they paid off their co-conspirators) then the indictment would have come 4 years and 4 months after the conspiracy ended.

The Court concluded that "a Sherman Act conspiracy continues through the time of illegal payoffs and receipt of payments." Slip Op. at 6. The Court based its decision on the following reasoning:

As long as some action is necessary to achieve a conspiratorial objective, a conspiracy, under the Sherman Act or otherwise, continues until the offense has been abandoned or until that objective is accomplished. [citations omitted.]

In this case, the indictment charged and appellants admitted by their guilty pleas that the conspiracy by its terms included the rigging of a bid, the securing of an artificial price for the [project], and payoffs to the co-conspirators who helped secure the project. Moreover, the requests for payments, which, like the payoffs were also made in 1980, reflected the inflated and noncompetitive price for the work. These later acts were necessary to the successful consummation of the bid rigging agreement. In fact, as the government points out, the conspirators had to continue cooperating in order for these objectives to be achieved

At 245.

Therefore, the Court concluded that the statute of limitations did not begin to run until May of 1980 and the indictment came within the five-year period.

Both sides have also urged that *United States v. INRYCO, Inc.*, 642 F.2d 290 (9th Cir.1981) supports their opposite positions. This, too, is a bid rigging case where the consideration for the conspiracy was the award of a subcontract to one of the successful bidder's co-conspirators. The Court held that the purpose of the conspiracy was not accomplished until the subcontracts were awarded, and therefore, the statute did not begin to run until that date.

The government urges that the cited cases are authority for the contention that the purpose of the conspiracy is not realized until payment is received, pointing out that the indictment alleges receipt of payment as an overt act and illegal enrichment as the ultimate object.

The defense urges that the same cited cases are authority for their position that the statute began to run when bids were submitted, as no other 'partnership purpose' remained to be done. The defense also indicates that the cases cited illustrate that payoffs or subcontract awards show the types of agreements which have a continuing partnership purpose.

The basic principle is clear. Although all of the necessary elements of the crime may have occurred, the statute does not begin to run until the purpose of the illegal conspiracy has been accomplished or abandoned. For so long as there is a continuing partnership purpose, the act of a 'partner' is deemed the act of all, if done in furtherance of the aims of the 'criminal partnership.'

A conspiracy to submit rigged bids is a crime even if no bids are submitted or if the rigged bid is not successful. If the bid is successful, then the conspiracy could continue either (a) as long as some other 'partnership purpose' remains, such as 'payoffs' or 'subcontract awards,' *or* (b) (as the government alleges) until any of the co-conspirators receives the ultimate purpose—the receipt of payment under the rigged bid.

Each of these possible combinations presents a different timeframe for computation of the statute of limitations.

In its initial denial of the Motions to Dismiss, this Court indicated that the resolution required a complete factual record. Since that time, the Court has had the benefit of oral arguments, a Bill of Particulars, and further briefing generated by the Court's expression of concern that a decision after a three or four week trial with great expense to all concerned was not the

most intelligent course of proceeding. An appeal of this order will present the matter to the Circuit Court in advance of that expense. As the Court believes its decision is correct, it is better for all concerned that this order be entered now rather than later.

This case is clearly distinguishable from both *A–A–A* and *INRYCO*. No claim is made that the parties engaged in any joint action after submitting the rigged bids. The indictment and the Bill of Particulars allege an agreement resulting in each defendant being the 'designated bidder' on a separate project. The consideration between the 'criminal partners' was the abstention of the others from bidding competitively upon each other's 'designated project.' The terms and conditions of the illegal contract were completed when the rigged bids were submitted. No sharing of the spoils after payment or showing of favoritism on subcontract award is present.

Under the indictment and Bill of Particulars, the Court is forced to the conclusion that the purpose of the conspiracy was accomplished when the rigged bids were submitted. No guarantees existed that any or all of the rigged bids would be a successful bid. Each contractor, if successful as the bidder, had the opportunity to profit or lose money on a specific project. If unsuccessful as a bidder, no consolation payment or subcontract opportunity is present. No co-conspirator had any participation rights or obligation to the others after the bid was submitted.

Each individual conspirator who was awarded a bid received payment upon completion of that project. Common sense tells us that the hope of the opportunity to profit was a common motivating factor behind the formation of the conspiracy. It does not follow, however, that the purposes of the 'criminal partnership' survived the bid submissions. Once the bids were submitted, only the interest of each individual bidder, as an individual and not as a co-conspirator, remained. No partnership interest or conspiracy purpose remained. Therefore, this situation is distinguishable from the situation in *A–A–A* and *INRYCO* where there were 'payoffs' made to co-conspirators after the bids were submitted.

From this analysis, the Court concludes that the indictment was not filed within the five-year statute of limitations period, and the prosecution is barred.

THEREFORE, THE DEFENDANTS' MOTION TO DISMISS IS GRANTED.