### UNITED STATES of America, Plaintiff-Appellant,

v.

### Milton H. GIRARD, Defendant-Appellee.

#### No. 83–3549
#### Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 29, 1984.

Rehearing Denied Nov. 29, 1984.

the Housing Authority of New Orleans (Housing Authority) to replace space heaters in a housing complex. Funding for the contract was provided by the United States Department of Housing and Urban Development. Allegedly, Girard conspired with various Housing Authority employees to rig the bidding process to secure the contract. After completion of the contract, Girard allegedly paid another Housing Authority employee to refrain from disclosing the fraudulent nature of the bidding process.

The contract was signed on March 16, 1977. Girard Plumbing's work was accepted as complete on November 22, 1977. Between March 30, 1977 and June 7, 1978 the Housing Authority issued a series of payments to Girard Plumbing. According to the attached invoice, the check issued on March 13, 1978 was the final payment. The invoice with the June 7, 1978 check for $620 identified it as an adjustment to the March 13 payment. The parties have stipulated that the last payment made by Girard to a coconspirator was on May 21, 1978.

John P. Volz, U.S. Atty., Curtis L. Collier, Harry W. McSherry, Jr., Asst. U.S. Attys., New Orleans, La., for plaintiff-appellant.

Charles Ciaccio, William Wessel, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY, and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

The United States appeals the district court's decision to dismiss the indictment of Milton H. Girard on the grounds that the statute of limitations had expired. We reverse.

I

On June 10, 1983, the grand jury for the Eastern District of Louisiana indicted Girard for conspiring to defraud the United States in violation of 18 U.S.C. § 371. The indictment stated that Girard, acting as president of Girard Plumbing and Sprinkler Co. (Girard Plumbing), had contracted with

In exchange for a delay in the indictment, Girard agreed to waive his rights under the statute of limitations for the period between June 3, 1983 and June 10, 1983. The limitation period, as defined by 18 U.S.C. § 3282, is five years. Therefore, the government was obliged to allege the existence of an ongoing conspiracy, as evidenced by an overt act, between June 3, 1978 and June 3, 1983. The government contended that the allegations in the indictment pertaining to the continued concealment of the fraudulent nature of the bids and the June 7 payment satisfied its obligation.

These arguments were rejected by the district court because (1) efforts to conceal a conspiracy are not an overt act and (2) the government's act in issuing the payment in reliance on the fraudulent bidding is also not an overt act in furtherance of the conspiracy, as required by 18 U.S.C. § 371. The court granted Girard's motion for dismissal because neither the signing of

the contract or the last payment to a coconspirator took place in the five years preceding the indictment.

On appeal the United States again argues that the continued concealment and the June 7 payment are overt acts evidencing a continued conspiracy within the prescribed time frame.

## II

[T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.

*Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957).

As alleged in the indictment, the scope of the instant conspiracy encompassed three purposes: (1) to secure the contract for Girard Plumbing; (2) to obtain Housing Authority funds under the contract; and (3) to conceal the fraudulent nature of the bidding from the appropriate authorities. The conspiracy continued until these objectives were satisfied, and the conspirators may be prosecuted as long as an overt act in furtherance thereof is performed within the appropriate period. *See Grunewald*, 77 S.Ct. at 977.

### A

Girard's contention that the purpose of the conspiracy ended with the award of the contract represents an overly narrow construction of the alleged agreement. His interest lay not in securing the contract itself, but in obtaining the money thereunder. The payments to his initial coconspirators were not made until after Girard Plumbing had received its first payment under the contract. Thus the conspiracy continued at least until Girard had received the full monetary benefits under the contract, including the $620 payment on June 7, 1978.

Our earlier decision, *United States v. Davis*, 533 F.2d 921, 927–29 (1976), does not affect the validity of this conclusion. In *Davis*, we held that a conspiracy to make false statements to a government agency ended with the last false statement, not when the government acted on the false statements to award the desired contract. According to the *Davis* indictment, the sole object of the conspiracy was to make false statements in violation of 18 U.S.C. § 1001. Given the narrow scope of the particular indictment, we could not say that the obtaining of the contract was an objective of the conspiracy as charged. We specifically noted, however, that the indictment could not be read as charging the defendants with a conspiracy to defraud the United States under 18 U.S.C. § 371. In the present case, the broader scope of the indictment allows us to accept the government's allegations that the purposes of the conspiracy included the receipt of the funds. *See United States v. Walker*, 653 F.2d 1343, 1346–47 (9th Cir.1981), *cert. denied*, 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982).

Our determination that the conspiracy continued until Girard had realized fully his anticipated economic benefits is consistent with the law of other circuits. The Second Circuit, in *United States v. Mennuti*, 679 F.2d 1032 (2d Cir.1982), a prosecution under 18 U.S.C. § 371 for conspiracy to commit mail fraud, ruled that a conspiracy to fraudulently obtain insurance funds by burning a house did not end when the insurance check was issued. Instead it continued until each participant had received his agreed-upon payoff. Mennuti's compensation was the right to purchase the property after the fire at a reduced price. Accordingly, the conspiracy continued after the receipt of the insurance check and the execution of the contract giving Mennuti the right to purchase the land until the sale actually closed six months later. This closing was the only event within the statutory time period. *Id.* at 1035. *See also United States v. Xheka*, 704 F.2d 974, 986 (7th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983) (conspiracy to

destroy a building used in interstate commerce by means of explosives in violation of 18 U.S.C. §§ 371, 844(i) did not end until the conspirators either obtained the economic benefit that motivated the conspiracy, the insurance proceeds, or abandoned their claim.)

In deciding *Mennuti,* the Second Circuit relied heavily on *United States v. Walker,* 653 F.2d at 1343. Walker was convicted under 18 U.S.C. § 371 for bid-rigging in connection with a federal timber sale. On appeal, he argued that the charge was time-barred because the only purpose of the conspiracy was to secure the contract, which had been awarded more than five years before his indictment. The Ninth Circuit rejected this contention, holding that the conspiracy continued after the completion of the central objective, the securing of the contract, because it encompassed an additional objective, the continued acquisition and division of profits obtained by defrauding the United States. *Id.* at 1350.

The defendant in *United States v. Helmich,* 704 F.2d 547 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 353, 78 L.Ed.2d 317 (1983), the defendant was indicted for conspiracy to commit espionage. He contended that his 1981 indictment was untimely because it did not charge him with transmitting information after 1964. The indictment, however, also alleged that the conspiracy included an agreement for the Soviet Union to pay Helmich and that he had travelled to Canada in 1980 to collect outstanding compensation. Therefore, the conspiracy continued until Helmich received his anticipated economic benefits in 1980. The payoff, which was the last overt act under the conspiracy, triggered the limitations period. *Id.* 704 F.2d at 549.

Under the terms of the agreement alleged here, each of Girard's coconspirators was to receive a set payoff on specified dates between March 30, 1977 and March 21, 1978. The economic benefit for Girard was to be the funds obtained under the illegally secured contract. He did not receive this benefit on March 16, 1977, when the contract was awarded, but as the Housing Authority issued partial payments between March 30, 1977 and June 7, 1978. Girard's contention that the June 7 check was not a payment but an account adjustment is irrelevant. The accounting terminology used by the Housing Authority on its invoices is not controlling. Girard received these funds after signing an undated form certifying that the $620 was the balance due under the contract. Therefore, the money was part of the economic benefit which Girard sought and received under the alleged terms of the conspiracy.

It is true, as the district court noted, that there was no plan to divide the $620 between the coconspirators after its receipt. The fact that Girard was to retain the entire sum himself, however, does not mean that obtaining the funds was not an objective of the conspiracy. As discussed above, according to the indictment, each coconspirator received a payment after payments on the contract had begun and Girard received the rest of the funds. The mere fact that the alleged agreement defined the payoff terms in this manner, instead of providing each coconspirator with a percentage of each Housing Authority payment, does not defeat our determination that one of the purposes of the conspiracy alleged here was to obtain all funds possible under the contract. The conspiracy continued until June 7, 1978 when the last $620 was paid.

**B**

The acceptance of this sum satisfies *Grunewald*'s requirement that an overt act in furtherance of the conspiracy within the prescribed time frame must be alleged. We rely solely on Girard's act of accepting and retaining the payment and not the Housing Authority's act in issuing the check. Therefore, we do not reach the district court's conclusion, based on *United States v. Davis,* 533 F.2d at 928, that the

Housing Authority reliance on the earlier fraud does not constitute an overt act.

Girard's act furthered the alleged purpose of obtaining the funds under the contract. Even though the acceptance, in and of itself, was perfectly legal, it still satisfies the requirement of an overt act because of the agreement's illegal purpose. *United States v. Jones,* 642 F.2d 909, 914 (5th Cir.1981). Moreover, the fact that only Girard was directly involved in the acceptance of the check does not affect the propriety of characterizing this as an overt act. Even a unilateral act by a single coconspirator, if in furtherance of the purposes of the agreement, is sufficient under the terms of § 371. *See United States v. Enstam,* 622 F.2d 857, 867 (5th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Fontenot,* 483 F.2d 315, 322 (5th Cir.1973). Given our determination of the scope of the alleged conspiracy, Girard's act of accepting funds under the contract furthered the purposes of this agreement. Since that act occurred after June 3, 1978, the indictment was timely.

### C

This conclusion makes it unnecessary to consider the government's arguments pertaining to the continued concealment of the fraud.

### III

Our decision today is limited to the holding that the government has properly alleged a conspiracy existing within the appropriate time frame and a timely overt act in furtherance thereof. At trial, of course, the government still must convince the jury that the scope of the conspiracy included the obtaining of all the funds under the contract before a conviction can be upheld. *United States v. Walker,* 653 F.2d at 1346 n. 6; *see Grunewald,* 77 S.Ct. at 979.

The dismissal of the indictment is

REVERSED.