WACKENHUT APPLIED TECHNOLOGIES CENTER, INCORPORATED, Plaintiff–Appellant,

v.

SYGNETRON PROTECTION SYSTEMS, INCORPORATED; the De La Rue Company, PLC, Defendants–Appellees,

Commonwealth of Virginia, Intervenor.

WACKENHUT APPLIED TECHNOLOGIES CENTER, INCORPORATED, Plaintiff–Appellee,

v.

The DE LA RUE COMPANY, PLC, Defendant–Appellant,

Commonwealth of Virginia, Intervenor,

and

Sygnetron Protection Systems, Incorporated, Defendant.

WACKENHUT APPLIED TECHNOLOGIES CENTER, INCORPORATED, Plaintiff–Appellee,

v.

SYGNETRON PROTECTION SYSTEMS, INCORPORATED, Defendant–Appellant,

Commonwealth of Virginia, Intervenor,

and

The De La Rue Company, PLC, Defendant.

Nos. 91–1656 to 91–1657.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1992.

Decided Nov. 10, 1992.

Joseph Armand Artabane, argued (Alan M. Winterhalter and Michael W. Kauffman, on brief), Elliott, Bray & Riley, Washington, D.C., for appellant.

Bruce Burton McHale, Chamowitz & Chamowitz, P.C., Alexandria, Va., argued, for appellees.

J. Stephen Quantannens, Gardner, Carton & Douglas, Washington, D.C., and Mary Sue Terry, Atty. Gen., and W. Mark Dunn, Asst. Atty. Gen., Office of the Atty. Gen., Richmond, Va., on brief, for intervenor.

Before PHILLIPS, Circuit Judge, SPROUSE, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

SPROUSE, Senior Circuit Judge:

In this appeal, we review a judgment of the district court concerning contracts to supply a building security system in a United States government facility located in Reston, Virginia. Wackenhut Applied Technologies Center, Inc. (WATC) brought this action against Sygnetron Protection Systems, Inc. (Sygnetron) and The De La Rue Company, P.L.C. (De La Rue), alleging breach of contract and a number of tortious interferences with its business relationships. WATC, the prevailing plaintiff, appeals the court's reduction of its award, and Sygnetron and De La Rue, the two losing defendants, cross appeal. We affirm the judgment in its entirety.

Involved is a complex commercial contract transaction. WATC, a subsidiary of Wackenhut International, Inc. (WII), provides security systems and services to government and commercial clients. Collins International Service Company (CISCO), the facilities manager for the involved building, is a subsidiary of Rockwell International Corporation. Sygnetron, a wholly-owned subsidiary of De La Rue, designs and manufactures security and access control systems. De La Rue is a multi-national corporation headquartered in London. CISCO, WII, and Rockwell International Corporation are not parties to this action.[1]

Although the parties at trial and on appeal offer contrary versions of the facts, we must, of course, interpret them in a light required by the jury's verdict in favor of WATC. So interpreted, the evidence reflects that sometime in December 1989, CISCO approached WII requesting that it submit a proposal to provide a security system for the government building. WII expressed an interest, but in order to meet the requirements for its putative proposal it contacted Sygnetron, requesting that it supply the hardware for the system. WII and Sygnetron agreed that the latter would supply the hardware (the hardware contract) for approximately $1.7 million. In March of 1990, WII assigned the contract to WATC. On March 30, 1990, WATC and Sygnetron directly entered into another written agreement in which Sygnetron agreed to supply technical services on the security system contract for an amount not to exceed $50,000. The technical services contract was to terminate after one month.

Shortly thereafter, WATC received a wire authorization from CISCO for design work preliminary to contract negotiations, and on May 17, 1990, to move the parties to the final stages of contract negotiation, CISCO convened a meeting of all parties to the building security system proposal. At the meeting, Sygnetron agreed that it would provide WATC with a revised technical services proposal and the pricing data by the close of business on June 1, 1990. All parties knew that this information was required for inclusion in the final WATC proposal to be presented to CISCO by June 5, 1990. On May 17, WATC and Sygnetron

---

1. The Commonwealth of Virginia intervened as an appellee in this case to support the constitutionality of Va.Code Ann. § 8.01–38.1, which provides a statutory cap on punitive damages.

also agreed to extend the technical services contract to July 31, 1990, and to enlarge the spending cap to $150,000.

In the meantime, however, De La Rue executives solicited WATC to purchase Sygnetron, or in the alternative, to substantially increase the price of the Sygnetron subcontract to absorb excess overhead occasioned by De La Rue's contemplated disposal of Sygnetron.[2] After WATC informed De La Rue on May 29, 1990, that it had no interest in purchasing Sygnetron, De La Rue began winding down the affairs of its subsidiary. On June 1, 1990, De La Rue instructed Sygnetron to submit to WATC the revised technical services proposal, but not the pricing data. On that date Sygnetron received a letter from WATC notifying Sygnetron that it was canceling the technical services contract because of Sygnetron's breach in not submitting the required pricing list. WATC nonetheless submitted its proposal to CISCO on time. CISCO, however, rejected the proposal as inadequate and on June 18, 1990, terminated its consideration of WATC as a contractor for the building's security system.

Two months after CISCO's termination, WATC filed this diversity action in the district court against De La Rue and Sygnetron. It asserted claims against Sygnetron for breach of the hardware subcontract, breach of the technical services contract, and fraud in the inducement of both contracts. It charged Sygnetron and De La Rue with conspiring to injure its business and tortiously interfering with its CISCO contract. De La Rue, alone, was charged with tortiously interfering with the WATC/Sygnetron hardware subcontract and the technical services contract.

At trial, the district court ordered a directed verdict in favor of Sygnetron and De La Rue on the conspiracy and fraud counts.[3] After a three day trial, the jury returned a verdict in favor of WATC and

against Sygnetron on the breach of the hardware subcontract and breach of the technical services contract. It found for WATC and against De La Rue for tortious interference with both contracts. It awarded $100,000 in compensatory damages to WATC from Sygnetron and De La Rue jointly, and imposed $1,000,000 in punitive damages against De La Rue.[4] The jury, however, denied WATC's claims against De La Rue and Sygnetron for tortious interference with WATC's business relationship with CISCO.

Following the verdict, De La Rue moved to set aside the verdicts for tortious interference with contract and the punitive damages award, and for a new trial. The district court denied that motion. Alternatively, De La Rue moved for a judgment notwithstanding the verdict on the punitive damages award, asking that it be reduced from $1,000,000 to $350,000, under Va.Code Ann. § 8.01–38.1, Virginia's statutory cap on punitive damages. The district court granted this motion. WATC appeals presenting statutory and constitutional challenges to the district court's reduction of punitive damages. De La Rue and Sygnetron cross appeal, challenging the jury's findings that the subcontract and support services agreement existed, the sufficiency of the jury's finding of malice for punitive damages, and other rulings of the trial court.

I

We first address WATC's challenge to the district court's imposition of Virginia's statutory cap on jury's punitive damages award. The Code of Virginia provides:

> In any action accruing on or after July 1, 1988, including an action for medical malpractice under Chapter 21.1 (§ 8.01–58.1 et seq.), the total amount awarded for punitive damages against all defendants found to be liable shall be determined by

---

2. Sygnetron was losing money. De La Rue had authorized the sale of Sygnetron as a matter of formal board policy on July 25, 1989, and in early 1990 ordered that if a purchaser was not found, it should be liquidated.

3. Those rulings are not appealed.

4. Although not at issue on appeal, the jury also awarded $50,000 to Sygnetron on a counterclaim against WATC.

the trier of fact. In no event shall the total amount awarded for punitive damages exceed $350,000. The jury shall not be advised of the limitation prescribed by this section. However, if a jury returns a verdict for punitive damages in excess of the maximum amount specified in this section, the judge shall reduce the award and enter judgment for such damages in the maximum amount provided by this section.

Va.Code Ann. § 8.01–38.1.

The district court, applying this provision, reduced the punitive damages award against De La Rue from $1,000,000 to $350,000. In this appeal, WATC contends that the Virginia legislature intended that the punitive damages cap should apply only in unintentional tort actions. It also argues that applying the cap to actions such as are involved in this case would violate the due process clause of the Fourteenth Amendment to the United States Constitution and the due process clause of the Virginia Constitution. We find no merit in any of these arguments.

We, of course, begin our task of interpreting the statute with a review of its language. *Mallard v. United States Dist. Court,* 490 U.S. 296, 300, 109 S.Ct. 1814, 1817, 104 L.Ed.2d 318 (1989); *Singleton v. International Ass'n of Machinists,* 240 Va. 403, 397 S.E.2d 856, 858 (1990). The drafters of the Virginia statute, in limiting punitive damages, chose the phrase "any action" to define the class of cases to which the statute would apply—they did not further define "any action." In our view, the term is unequivocal. *See United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (holding that words of a statute are to be accorded their ordinary and common meaning unless they are ambiguous). There is no definitional language indicating that the term "any action" is limited to unintentional tort actions. *See* Va.Code § 8.01–38.1; S. 402, c. 255, 1987 Va.Acts 341; S. 402 LD5227131 (proposed Jan. 14, 1987); S. 402, LD7087131 (proposed Feb. 4, 1987); Joint Subcommittee Studying the Liability Insurance Crisis and the Need for Tort Reform, Report to the Governor and the General Assembly of Virginia, S.Doc. No. 11, 1987 Sess. 3–17 (1987) [hereinafter S.Doc. No. 11]. It would seem by its selective silence that the legislature intended the words to be used in their ordinary sense. *Russello v. United States,* 464 U.S. 16, 21, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983); *Diggs v. Commonwealth,* 6 Va.App. 300, 369 S.E.2d 199, 201 (1988).

WATC contends nevertheless that such an interpretation would be contrary to the legislative history and the intent of the statute as a whole. It argues that the original legislation which led to this statute was introduced as a "[m]onetary limitation on the amount of noneconomic damages ... for personal injury or death." *See* S. 402, LD5227131 (proposed Jan. 14, 1987). Further, it argues that neither the legislation nor the report of the state subcommittee preceding the statute refers to intentional actions. *Id.;* S.Doc. No. 11 at 5, 10, 17. WATC stresses that the report was concerned with the liability insurance crisis and the need for tort reform. *Id.* at 3–18.

The subsequent treatment of the bill containing the contested language, however, argues against WATC's positions. While the original purpose of the legislation may have been to limit recovery of noneconomic damages in personal injury actions to halt the rising costs of liability insurance statewide, the Virginia House of Delegates amended the bill and the Virginia Senate agreed to the changes. *See* Journal of the Va. House of Delegates, 1987 Sess. 1274–76 (Feb. 26, 1987); Journal of the Va. Senate, 1987 Sp.Sess. 801–02 (Feb. 27, 1987). The term "noneconomic damages" was replaced with the term "punitive damages," and the language limiting the legislation to damages in personal injury and wrongful death actions was struck in favor of the language "in any action, ... including an action for medical malpractice." Va.Code Ann. § 8.01–38.1; Journal of the Va. House of Delegates, 1987 Sess. 1274–76 (Feb. 26, 1987); Journal of the Va. Senate, 1987 Sp. Sess. 801–02 (Feb. 27, 1987). In our view, the history of this legislation indicates that the Virginia legislature intended that the punitive damages cap be applied "in any action" and in interpreting the statute, we should not deviate from the plain meaning of the statute.

Nor, contrary to WATC's contentions, do we perceive any inconsistency between sections 8.01–38.1 and 38.2–227 of the Virginia Code. Section 38.2–227 prohibits the purchase of insurance which would provide coverage for an award of punitive damages for intentional acts. WATC points to this section as an indication that the legislature did not intend to limit punitive damages in actions for recovery caused by intentional acts. To interpret section 8.01–38.1 otherwise, it urges, would create an irreconcilable inconsistency between two state statutes. We fail to see the inconsistency, and as the United States Supreme Court has stated, "when two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974); *see Lillard v. Fairfax County Airport Auth.,* 208 Va. 8, 155 S.E.2d 338, 342 (1967) (the same). The purpose of punitive damages is to punish and deter. *See Kamlar Corp. v. Haley,* 224 Va. 699, 299 S.E.2d 514, 517 (1983). Punitive damages for intentional acts are not eradicated by the cap, rather, they are limited so as to avoid excessive penalties. Prohibiting insurance for intentional acts is not in conflict with the goal of limiting the amount of damages a jury can award.

■ Finally, in the punitive damages context, WATC contends that section 8.01–38.1 violates the due process guarantees secured by the Federal and Virginia Constitutions. The parties agree that Virginia's statutory cap on punitive damages is an economic regulation, and the Fourteenth Amendment requires only that an economic regulation bear a rational relation to a proper governmental purpose. *See Duke Power Co. v. Carolina Envtl. Study Group,* 438 U.S. 59, 83–84, 98 S.Ct. 2620, 2635–36, 57 L.Ed.2d 595 (1978); *Boyd v. Bulala,* 877 F.2d 1191, 1196–97 (4th Cir. 1989) (applying Virginia law).[5]

Here the government's purpose was to limit the jury's discretion in the awarding of punitive damages. Its goal was to limit juries' punitive damages awards to those that punish and deter and to prevent awards that burden the state's economy. *See* S.Doc. No. 11, at 5, 17; *see also Pacific Mut. Life Ins. Co. v. Haslip,* —— U.S. ——, —— – ——, 111 S.Ct. 1032, 1043–44, 113 L.Ed.2d 1 (1991) (noting that punitive damages awards which "run wild" are unconstitutional). As we have today, courts have routinely rejected substantive due process challenges to statutory damages caps and, consequently, affirmed that these statutes serve proper governmental purposes. *See Duke Power,* 438 U.S. at 88 n. 32, 98 S.Ct. at 2638 n. 32; *Boyd,* 877 F.2d at 1197; *Franklin v. Mazda Motor Corp.,* 704 F.Supp. 1325, 1337 (D.Md.1989); *Etheridge v. Medical Ctr. Hosps.,* 237 Va. 87, 376 S.E.2d 525, 531 (1989). Moreover, we have indicated that a statutory cap is one factor that might be considered in insulating a punitive damages award against a constitutional attack based on unbridled jury discretion and infringement of substantive due process rights. *Johnson v. Hugo's Skateway,* 974 F.2d 1408, 1415 n. 6 (4th Cir.1992).[6]

## II

■ We turn to De La Rue and Sygnetron's cross appeal of the district court's denial of its motion for a judgment notwithstanding the verdict on the jury's findings that the parties had formed the hardware subcontract and the technical services contract. We also consider De La Rue's argument that there was insufficient evidence to support a finding of malice for the award of punitive damages. The cross-appellants contend that WATC's parent company, WII, was the real party to the contract and that it was never assigned to WATC. The jury resolved this factual issue in favor of WATC. In reviewing De La Rue and Sygnetron's challenge to the sufficiency of the evidence, we consider

---

5. The Virginia Supreme Court has applied a similar test when determining the due process constitutionality of Virginia's statutes regulating economic relationships. *See Etheridge v. Medical Ctr. Hosps.,* 237 Va. 87, 376 S.E.2d 525, 531 (1989).

6. *Johnson v. Hugo's Skateway* was primarily concerned with the constitutionality of jury instructions regarding punitive damages. *Id.* at 1414–18. Since the appellants did not raise a due process challenge similar to the one in *Johnson,* it is not at issue in this appeal.

whether a reasonable jury in viewing the evidence in the light most favorable to WATC could have reached this conclusion. *Id.* at 1412; *Austin v. Torrington Co.*, 810 F.2d 416, 420 (4th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). Applying that standard to the evidence, we must conclude that the jury's finding is more than adequately supported by the evidence.

■ Under the same standard, and contrary to the cross-appellants' contentions, we also determine that there was sufficient evidence of malice to support the punitive damages verdict. The evidence that De La Rue prohibited Sygnetron from submitting the price list of materials required by WATC for the CISCO proposal, immediately following WATC's refusal to purchase Sygnetron or increase the subcontract price, was alone sufficient to support the jury's finding of malice argued by the appellees to be missing. *See Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125, 129 (1986).

Next, De La Rue contends that the punitive damages award should be vacated for lack of a corresponding compensatory damages award, and that the jury was not clearly informed that compensatory damages must be found prior to the imposition of punitive damages. In the first place, De La Rue did not object to the charge given to the jury, and we do not "ordinarily ... address ... objections not timely and properly saved in the trial below." *Austin*, 810 F.2d at 420. Even overlooking this usually fatal procedural mistake, however, we are convinced that punitive damages were awarded only after a properly considered award of compensatory damages.

■ We recognize, of course, that under Virginia law, an award of compensatory damages is an "indispensable predicate" for an award of punitive damages. *See Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 313 S.E.2d 384, 388 (1984). The award here satisfied that test. The jury[7] first awarded compensatory damages against De La Rue and Sygnetron, jointly and severally, and then assessed punitive damages against De La Rue.

Finally, the cross-appellants contend that the verdicts were factually inconsistent,

---

7. The district court instructed the jury as follows:

If you should find from a preponderance of the evidence that the plaintiff is entitled to your verdict for compensatory damages against a defendant, even though nominal, ... and you should further find that the act or omission of that defendant or defendants which proximately caused actual compensatory damages was wantonly or willfully or oppressively done, or maliciously done, then you may, if you unanimously choose to do so, add to the amount of compensatory damages such amount as you should unanimously agree to be proper as punitive damages.

....

Whether or not to make an award of punitive damages in addition to compensatory damages is a matter exclusively within your province, if you should unanimously find from a preponderance of the evidence in the case that a defendant's act which proximately caused compensatory damage to the plaintiff was maliciously, or wantonly, or oppressively done.

But you should bear in mind not only the conditions under which but the purposes for which the law permits an award of punitive damages to be made, and the requirement of the law that the amount of such extraordinary damages when awarded must be fixed with calm discretion and sound reasoning, and fixed in amount; and not because of any sympathy, or bias, or prejudice with respect to any matter in the case.

You may consider the following factors in determining whether and to what extent an award of punitive damages should be made:

First, the character of the defendant's act;

Second, the nature and extent of the harm to the plaintiff which the defendant caused, or intended to cause;

Third, the defendant's wealth;

And, fourth, the good faith of the defendant. That is, whether it was done in good faith or maliciously.

The character of the defendant's conduct may suffice for an award of punitive damages where that defendant acted in conscious disregard for the rights of the plaintiff, or as I have indicated, maliciously, or wantonly, or oppressively.

The nature and extent of the harm done to a plaintiff is an important factor in the determination of your award of any punitive damages, as the law generally requires that the amount of punitive damages bear some reasonable relation to the amount of actual damages.

Finally, since punishment and discouragement are the fundamental purpose of punitive damages, you may consider the wealth of the defendant in order to determine what amount

that the trial court erred in denying a new trial, *see* Fed.R.Civ.P. 59; *Poynter ex rel. Poynter v. Ratcliff,* 874 F.2d 219, 223 (4th Cir.1989), and that the contracts were invalid because CISCO had not submitted cost data and certification forms required by the Federal Acquisition Regulations and because there was no funding available for the CISCO/WATC contract. We reject all of these arguments. Any inconsistencies between the verdicts could be explained by a jury view that the proposals and contracts involved several firms, and that the proposals varied or that there was an interference with the WATC/Sygnetron relationship but no interference with the WATC/CISCO relationship. There is not sufficient merit to the other arguments to warrant discussion.

The judgment is affirmed in its entirety.

AFFIRMED.

of punitive damages constitute true punishment.