**UNITED STATES of America,**

v.

**Gene SHELTON.**

**Crim. No. A–92–CR–105.**

United States District Court,
W.D. Texas,
Austin Division.

Jan. 12, 1993.

Dan Mills, U.S. Atty.'s Office, Austin, TX, for plaintiff.

David Reynolds, Austin, TX, for defendant.

### ORDER

NOWLIN, District Judge.

Before the Court are Defendant Gene Shelton's Motions to Dismiss the Indictment, filed on July 8, 1992, and September 2, 1992. On December 1, 1992, this Court held a hearing to consider this motion and all of the other motions then pending in this action. Having reviewed and considered these motions, the responses, the argument of counsel, and the applicable law, this Court is of the opinion that the Defendant's motions to dismiss should be DENIED.

### BACKGROUND

The defendant, Gene Carlton Shelton, is charged by a three-count indictment, filed on June 18, 1992. Count One of the Indictment charges Defendant Shelton with conspiracy to commit offenses against the United States involving bribery and misapplication of federal funds, in violation of 18 U.S.C. § 666(a)(1)(A) and (a)(2) and 18 U.S.C. § 371. Count Two charges Defendant Shelton with misapplication of property, valued at more than $5,000.00, that was under the control of a government agency that received more than $10,000.00 in federal funding during a one year period. Count Three charges Defendant Shelton with bribery in violation of 18 U.S.C. § 666(a)(2).

The indictment makes the following allegations. The Defendant, Gene Shelton, was the Deputy Director of the Texas Department of Community Affairs (the "TDCA"). The indictment further alleges that the TDCA was a government agency that received in excess of $10,000.00 of federal assistance in a one year period, during all times relevant to the indictment. Douglas Allen Duke was the Executive Director of the Texas Conservation Corp. Foundation, Inc. (the "TCC"), an entity partially funded by a grant from the TDCA.

Jane Johnson was a relative of Willie L. Scott, the Executive Director of the TDCA. In March of 1987, Jane Johnson applied for employment with the TDCA. Nepotism laws of the State of Texas prevented the TDCA from hiring Jane Johnson because Willie Scott was her cousin.

On or about April 10, 1987, Defendant Shelton discussed with Susan Kamas the need to create a position for a "political hire." Contacting Doug Duke pursuant to her instructions from Defendant Shelton, Kamas offered to approve a contract amendment, a $100,000.00 additional grant, requested by Duke for the benefit of TCC if Duke hired Johnson. Duke accepted this deal.

On or about May 7, 1987, the TDCA approved a $100,000.00 "contract amendment" for the TCC. From on or about June 1, 1987, through and including December 3, 1987, Jane Johnson was paid a salary by TCC out of the $100,000.00 contract amendment.

### MOTIONS TO DISMISS

The Defendant argues that the statute of limitations terminated in May of 1992, a date before the date, June 16, 1992, upon which the indictment was issued. The Defendant argues that the $100,000.00 grant occurred on May 7, 1992. After that date, the Defendant argues that he no longer had control over the funds in question. The Defendant argues that the five year statute of limitations applicable, pursuant to 18 U.S.C. § 3282, to the charged offenses had expired prior to the return of the indictment by the grand jury.

The Defendant also argues that the particular statute is inapplicable to his alleged conduct. Finally, the Defendant argues that counts Two and Three of the indictment are multiplicitous.

To the Defendant's first argument that the statute of limitations has expired, the Government has responded that the applicable five-year statute of limitations was extended for three years, pursuant to 18 U.S.C. § 3287. The Government argues that the United States was at war in 1991 in the Middle East armed conflict with Iraq.

### The Statute of Limitations Issues

18 U.S.C. § 3287 appears to have only been used in cases that involved conduct during or shortly after World War II. There are no civilian cases that involve the use or application of 18 U.S.C. § 3287 since that

era. Far more than the conflict in the Persian Gulf, World War II had an extremely broad and intrusive effect into the entire country.

The first issue that the Court must address is whether 18 U.S.C. § 3287 is applicable to the present situation. Section 3287 provides in pertinent part:

When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real property or personal property of the United States, or (3) . . ., shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.

18 U.S.C. § 3287.

 Further, the Supreme Court has held that this suspension statute does not apply to a charged offense, "unless, under the statute creating the offense, fraud is an essential ingredient of it." *See Bridges v. United States*, 346 U.S. 209, 222, 73 S.Ct. 1055, 1062, 97 L.Ed. 1557 (1953). 18 U.S.C. § 3287 suspends the running of limitations only where fraud against the Government is an essential part of the crime. *Id.*, 346 U.S. at 222, 73 S.Ct. at 1062–1063. In *Bridges*, the Court held that fraud is not an essential ingredient of the offense of making a false statement under oath in a naturalization proceeding. *Id.* For the Suspension Act to apply, the charged offense must involve the defrauding of the United States in some pecuniary manner or in manner concerning property. *See Bridges*, 346 U.S. at 221, 73 S.Ct. at 1062.

The Supreme Court has explained that: [T]he Suspension Act [18 U.S.C. § 3287] [applies] to all offenses which are fairly identifiable as those in which fraud is an essential ingredient, by whatever words they be defined, . . . .

*United States v. Grainger*, 346 U.S. 235, 244, 73 S.Ct. 1069, 1074, 97 L.Ed. 1575 (1953).

With respect to offenses under the False Claims Act, the "combination of either falsity, fiction, or fraud with the claim is" sufficient for the Suspension Act to apply. *Id.* The charged offense in the present action does involve some "falsity, fiction, or fraud."

 The Government has relied upon a decision of a military court of appeals that declared that the conflict in the Middle East with Iraq constituted a war. For armed conflict to amount to a "war" for military purposes admittedly should be a lower standard than to constitute a war for civilian purposes. For the Persian Gulf conflict to have amounted to a war under 18 U.S.C. § 3287, Congress should have formally recognized that conflict as a war. The Judicial Branch of the United States has no constitutional power to declare a war.

Whether an armed conflict is a war for the purposes of military rules and regulations is, and should be, distinct from whether a conflict is a war for civilian purposes. The Congressional intent underlying the Suspension Act appears to have been more directly concerned with such massive and pervasive conflicts as World War II. Indeed, there appear to be no reported decisions of civilian courts in which the Suspension Act was applied during any of the "wars" involving the United States that have occurred since World War II. The Vietnam War was arguably a much more intrusive and lengthy conflict than the recent conflict in the Persian Gulf area, but the Suspension Act does not appear to have ever been used for any offenses that occurred during the Vietnam War.

This Court finds that the Suspension Act does not apply to this case. The recent conflict with Iraq did not constitute a "war" as that term is used in the Suspension Act.

Because the Suspension Act is inapplicable to the present situation, the statute of limitations issue depends upon whether the salary payments made to Jane Johnson, subsequent to June 16, 1987, are part of the charged offenses. The Defendant argues that these payments were not part on any allegedly unlawful conduct on his behalf. The Defendant argues that his only overt act was the issuance of the $100,000 grant in May of

1987. The Government responds that all of the subsequent payments to Jane Johnson, individually and collectively, constituted misapplication of the funds, as well as a continuation of the conspiracy.

The Government relies upon *United States v. Girard*, 744 F.2d 1170 (5th Cir. 1984), to support the argument that the subsequent payments to Jane Johnson make the charged offenses all fall within the five year statute of limitations. In *Girard*, the Fifth Circuit held that the conspiracy continued until the defendant "fully realized his anticipated economic benefits." *Id.* at 1172. The Fifth Circuit quoted from a statement written by the United States Supreme Court:

> [T]he crucial question in determining whether the statute of limitations has run is the scope of the conspiratorial agreement, for it is that which determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy.

*Id.* (quoting *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957)). Explaining *Grunewald*, the Eleventh Circuit has stated:

> [A] conspiracy continues until the objectives of the conspiracy succeed or are abandoned and that to determine the objectives of any given conspiracy, the court must look to the conspiratorial agreement.

*United States v. Dynalectric Co.*, 859 F.2d 1559, 1564 (11th Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 157 (1989). The scope of the conspiracy includes the concealment of the fraudulent nature of the conduct, and the conspirators may be prosecuted as long as an overt act in furtherance of the conspiracy is performed within the appropriate period. *Girard*, 744 F.2d at 1172.

Addressing the applicability of the statute of limitations in a conspiracy case, the Fifth Circuit has held:

> [F]or purposes of the statute of limitations the overt acts alleged in the indictment and proved at trial mark the durations of the conspiracy.

*United States v. Davis*, 533 F.2d 921, 929 (5th Cir.1976) (emphasis in original).

In this case, this Court finds no cognizable support for any affirmative abandonment of or withdrawal from the conspiracy by the Defendant. The alleged conspiracy did not end with the transfer of funds under the "contract amendment." The conspiracy continued as long as those funds were distributed according to the alleged conspiratorial agreement between the alleged conspirators.

### The Applicability of the Statute

The federal statute which the Defendant is alleged to have violated is 18 U.S.C. § 666, which provides:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—

(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency; or

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more; or

(2) corruptly gives, or offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local, or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under any Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

18 U.S.C. § 666(a) and (b).

■ The Defendant has argued that 18 U.S.C. § 666 is inapplicable to the present case because of subsection (c), which provides that:

(c) This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.

18 U.S.C. § 666(c).

The Second Circuit has recently rejected a defendant's argument that 18 U.S.C. § 666(c) makes § 666(a) inapplicable to the intentional misapplication of funds that are used for otherwise legitimate purposes. *See United States of America v. Urlacher,* 979 F.2d 935, 938 (2d Cir., 1992). The Defendant has argued that the allegedly misused funds were used for an otherwise legitimate purpose. Following the rationale and decision of the Second Circuit in *Urlacher,* this Court disagrees with the Defendant. Subsection (c) of Section 666 does not serve to absolve the Defendant of wrongdoing merely because the funds were used to pay a "salary," especially where that "salary" is not bona fide.

The Eighth Circuit has recently reiterated the broad application of 18 U.S.C. § 666. *See United States of America v. Peery,* 977 F.2d 1230, 1232–1233 (8th Cir.1992). Because the defendant could reasonably believe that Section 666 would apply to him, the court rejected defendant Peery's argument that Section 666 is unconstitutionally overbroad and vague. *See id.* at 1233 n. 2. Congress intended that 18 U.S.C. § 666 be broadly construed. *Id.* at 1232.

In a case involving a similar constitutional challenge, the Fifth Circuit has ruled that 18 U.S.C. § 215(a) is not unconstitutionally vague and overbroad in a similar situation with respect to the time period in which the offense occurred. *See United States v. Wicker,* 933 F.2d 284 (5th Cir.1991) *cert. denied,* — U.S. —, 112 S.Ct. 419, 116 L.Ed.2d 439; *see also United States v. Kelly,* 973 F.2d 1145, 1152 (5th Cir.1992). In *Wicker,* the defendant therein was convicted of an offense under the then applicable version of 18 U.S.C. § 215(a). *See id.* at 286 and 287.

■ A statute is not overbroad "unless it reaches a "substantial amount of constitutionally protected conduct."'" *See Wicker,* 933 F.2d at 287 (citation omitted). If the Court finds that the alleged illegal conduct of the Defendant is within the "core conduct" that "§ 215 was and is designed to prohibit," then this statute is not overbroad with respect to this particular case. *See id.* at 288.

Regarding the "vagueness" issue of 18 U.S.C. § 215(a), the Fifth Circuit has stated that:

A statute violates due process if it is so vague that a person of ordinary intelligence does not have a reasonable opportunity to know what is prohibited, and if the law provides no explicit standards for enforcement. A statute is not presumptively vague because it does not have a specific intent requirement. To establish § 215 is unconstitutionally vague, [the defendant] must show that he could not have reasonably understood that *his* conduct was prohibited by the statute.

*Wicker,* 933 F.2d at 288 (emphasis in original) (citations omitted). Again, if the Defendant's actions are found to be within the "core conduct which § 215 was designed to prohibit and punish," then the statute is not unconstitutionally vague. *See id.* Congress's subsequent amendment of § 215 to include a "corrupt" intent element does not strengthen such a vagueness argument by a defendant. *Id.*

The Defendant relies heavily upon the decision of *United States v. Cicco,* 938 F.2d 441 (3rd Cir.1991). In that case, the Third Circuit explained that:

Congress enacted § 666, in part, to augment 18 U.S.C. § 641 and 665. The goal was to protect federal funds by authorizing federal prosecution of thefts and embezzle-

**1138**

ment from programs receiving substantial federal support even if the property involved no longer belonged to the federal government.

*Id.* at 445. The Third Circuit stated that Congress, under Section 666, also intended to enlarge and clarify the class of persons subject to the federal bribery laws. *Id.* The Third Circuit's decision involved the potential conflict between 18 U.S.C. § 601 and 18 U.S.C. § 666, and the court explained its conclusion:

> Criminal statutes, like § 666, must be construed narrowly. Congress enacted § 666 to remedy specific deficiencies in existing federal theft and bribery statutes. When it did so, Congress made no suggestion that § 666 was also designed to supplement § 601. Rather, Congress intended § 666 to address different and more serious criminal activity. We find that the district court correctly concluded that Congress did not intend § 666 to cover actions plainly prohibited by § 601.

*Id.* at 446. 18 U.S.C. § 601 applies to offenses involving the wrongful denial or deprivation of employment, or threat thereof, to induce, or attempt to induce, a person to make a contribution to a political candidate or party.

Analogizing to the rationale in *Cicco*, Defendant Shelton argues that 18 U.S.C. § 665 is more directly applicable to his alleged conduct than 18 U.S.C. § 666. 18 U.S.C. § 665 applies to offenses involving the misuse of funds allocated under the Comprehensive Employment and Training Act or the Job Training Partnership Act. 18 U.S.C. § 665.

■ The Government relies upon *United States v. Westmoreland*, 841 F.2d 572, 575–578 (5th Cir.1988), *cert. denied*, 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39. *Westmoreland* applied an expansive interpretation of 18 U.S.C. § 666. *Id.* Under *Westmoreland*, this statute is not unconstitutionally vague or overbroad as applied to Defendant Shelton. 18 U.S.C. § 666 is not unconstitutionally applied in this case. The Defendant has not shown that he could not have reasonably understood that his conduct was prohibited by the statute.

■ The Defendant also argues that either Count Two or Count Three of the indictment should be dismissed because these two counts are multiplicious of each other. The Defendant argues that the Government should be ordered to choose which of the two counts it wants to pursue and that the other count should be dismissed. The Government responds that these two counts are not multiplicious. Because the charged offenses each contain an element not found in the other, the indictment is not multiplicious.

## MOTIONS TO SUPPRESS

At the hearing, this Court denied Defendant Shelton's Motion To Suppress Evidence, filed July 8, 1992. This Court also denied the Defendant's Motion For Discovery And Suppression of Co-conspirator Statements, filed July 8, 1992. The Defendant provided no evidentiary or legal argument to support either of these two motions.

## CONCLUSION

ACCORDINGLY, IT IS ORDERED that Defendant Gene Shelton's Motions to Dismiss the Indictment, filed on July 8, 1992, and September 2, 1992, are hereby DENIED.

IT IS FURTHER ORDERED that all other motions that were pending as of December 1, 1992, in this action were resolved at the motions hearing held on that date.